# NO. 12-13-00339-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW # 2* |
| *J. T. K., A CHILD* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

L.K. appeals the termination of her parental rights to J.T.K. and raises two issues on appeal.[1]  We affirm.

### BACKGROUND

L.K. is the mother of J.T.K., who was born on October 27, 2011.[2]  L.K. had been incarcerated for three months for the offense of driving while intoxicated with a child passenger when the Department of Family and Protective Services (the Department or CPS) received an anonymous report of the abuse or neglect of J.T.K.  The report included allegations that the people keeping J.T.K. during his mother's incarceration were chronically ill and unable to continue caring for him.  On September 28, 2012, the Department filed a petition for the protection of J.T.K., for conservatorship, and for termination in a suit affecting the parent-child relationship.  On October 22, 2012, the trial court appointed the Department temporary managing conservator of J.T.K. and named L.K. temporary possessory conservator of J.T.K.  The Department later filed a motion to proceed under aggravated circumstances alleging that L.K.'s parental rights to two other children had been involuntarily terminated.  The trial court granted

---

[1] To protect the identity of the child who is the subject of this suit, we use aliases to identify various individuals involved.  *See* TEX. R. APP. P. 9.8(b)(2).

[2] L.K. testified that J.T.K. was born on October 28, 2011, but the court documents show his date of birth as October 27, 2011.

the Department's request, waived the requirement that the Department develop a service plan for L.K., and set the case for trial.[3]

The case proceeded to a bench trial on October 23, 2013. Ultimately, the trial court determined that the parent-child relationship between L.K. and J.T.K. should be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

The involuntary termination of parental rights embodies fundamental constitutional rights. *In re C.L.C.*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.); *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001). When the state seeks to terminate one's parental rights, it seeks not only to infringe one's fundamental liberty interest, but to end it. *See In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002). A termination decree is "complete, final, irrevocable [and] divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). Thus, the breaking of bonds between a parent and child "can never be justified without the most solid and substantial reasons." *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179. Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179. However, parental rights are not absolute, and it is vital that the emotional and physical interests of the child not be sacrificed at the expense of preserving that right. *See In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the Texas Family Code permits the termination of parental rights if two elements are met. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. *Id.* § 161.001(1) (West Supp. 2013); *In re C.L.C.*, 119 S.W.3d at 390. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2013); *In re C.L.C.*, 119 S.W.3d at 390. Both elements must be proved by "clear and convincing evidence," and proof of one element does not alleviate the petitioner's burden of

---

[3] *See* TEX. FAM. CODE ANN. § 262.2015(b)(5), (7) (West Supp. 2013) (allowing court to waive service plan requirement and reasonable efforts to return child to parent when parental rights to another child were terminated pursuant to Section 161.001(1)(D) or (E) of the family code or involuntarily terminated to two children).

proving the other. TEX. FAM. CODE ANN. § 161.001; *In re C.L.C.*, 119 S.W.3d at 390. "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2008). Because there is a strong presumption that the best interest of the child is usually served by preserving the parent-child relationship, the burden of proof rests upon the party seeking to deprive the parent of his or her parental rights. *See Wiley*, 543 S.W.2d at 352; *In re C.L.C.*, 119 S.W.3d at 391.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In her first issue, L.K. contends that she received ineffective assistance of counsel, which gave the trial court "no other options but to proceed under aggravated circumstances and terminate" her parental rights. The Department contends there is no evidence that trial counsel's conduct fell outside the wide range of reasonable professional assistance.

### Standard of Review and Applicable Law

An indigent parent is entitled to appointed counsel in a termination of parental rights case, and that statutory right "embodies the right to effective counsel." *In re B.G.*, 317 S.W.3d 250, 253-54 (Tex. 2010). Ineffective assistance claims must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness. *In re L.C.W.*, 411 S.W.3d 116, 127 (Tex. App.—El Paso 2013, no pet.) (citations omitted); *see also Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 622-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citations omitted). When the record is silent concerning the reasons for counsel's actions, the reviewing court will not engage in speculation to find ineffective assistance of counsel, and the appellant bears the burden of overcoming the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *In re L.C.W.*, 411 S.W.3d at 127.

In reviewing claims of ineffective assistance of counsel, we consider all circumstances surrounding the case and apply the Supreme Court's two pronged test used in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003). Under *Strickland's* first prong, the parent must show that counsel's performance was deficient. *See id.* at 545 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). This requires a showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed by the Sixth Amendment. *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009) (citations omitted). Under the second prong, the parent must show that the deficient performance prejudiced the defense. *See In re M.S.*, 115 S.W.3d at 545. This requires a showing that counsel's errors were so serious as to deprive the parent of a fair trial, a trial whose result is reliable. *See In re J.O.A.*, 283 S.W.3d at 342 (citations omitted). To show prejudice, the parent must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *In re V.V.*, 349 S.W.3d 548, 559 (Tex. App.—Houston [1st Dist.] 2010, pet. withdrawn) (citations omitted). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In conducting our review, we "must primarily focus on whether counsel performed in a reasonably effective manner." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (citations omitted). We give great deference to counsel's performance, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *Id.* (citations omitted). To be successful in her ineffective assistance of counsel claim, L.K. must show that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064; *see also In re L.D.G.*, No. 12-11-00005-CV, 2012 WL 171888, at *2 (Tex. App.—Tyler Jan. 18, 2012, no pet.) (mem. op.) (citations omitted). Failure to satisfy *Strickland's* requirements defeats an ineffectiveness challenge. *See Walker*, 312 S.W.3d at 623.

**Discussion**

The record shows that at the time of removal, L.K. had been incarcerated in the Angelina County Jail for three months. Approximately one month after J.T.K.'s removal, L.K. pleaded guilty to the felony offense of driving while intoxicated and was placed on "deferred adjudication" community supervision.[4] L.K.'s conditions of community supervision required her to attend a residential treatment facility for nine months. Because L.K. was in the residential

---

[4] The record shows that L.K. was originally arrested for driving while intoxicated with a child passenger and that J.T.K. was the passenger. It is also worth noting that those who commit offenses for driving while intoxicated are not eligible for deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(1)(A) (West Supp. 2013).

treatment facility, she was not present during the hearing on the Department's motion to proceed under aggravated circumstances. L.K. alleges several reasons as support for her contention that trial counsel was ineffective.

### i. Aggravated Circumstances and Failure to Bench Warrant

L.K. contends that counsel was ineffective for failing to bench warrant her to the various pretrial hearings. She argues that trial counsel was ineffective during the hearing on the Department's motion to proceed under aggravated circumstances because she made no objections and "presented no witnesses or contrary evidence," which "gave the trial court "no choice but to grant the [Department's] motion."

Section 262.2015 of the family code authorizes the trial court to waive the requirement of a service plan and the requirement that the Department make reasonable efforts to return the child to a parent if the trial court finds that the parent has subjected the child to aggravated circumstances. *See* TEX. FAM. CODE ANN. § 262.2015(a), (b) (West Supp. 2013). The court may find that a parent has subjected a child to aggravated circumstances if

> the parent's parental rights with regard to another child have been involuntarily terminated based on a finding that the parent's conduct violated Section 161.001(1)(D) or (E) . . .
>
> [or]
>
> the parent's parental rights with regard to two other children have been involuntarily terminated.

*See id.* § 262.2015(b)(5), (7).

During the hearing on its motion, the Department introduced a certified copy of a Decree for Termination in which L.K. is named as the respondent mother of two children, "[Q.R.1. and Q.R.2.]." The decree states that the trial court found by clear and convincing evidence that L.K. "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well[]being of the children, pursuant to § 161.001(1)(D) of the Texas Family Code." The decree also states that L.K. "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well[]being of the children, pursuant to §161.001(1)(E) of the Texas Family Code. . . ."

5

At trial, a certified copy of the same termination decree was admitted into evidence and L.K.'s testimony confirmed that her parental rights to Q.R.1. and Q.R.2. were involuntarily terminated as set forth in the termination decree. Thus, L.K.'s testimony at trial affirmed the trial court's finding of aggravated circumstances, and L.K. does not challenge the sufficiency of the evidence supporting termination of her parental rights under Section 161.001(1)(M) of the family code. *See* TEX. FAM. CODE ANN. § 161.001(1)(M). Furthermore, L.K. admits in her brief that when she asked whether her absence in court would be "held against me," the trial court "assured her" that "it would not count against her." Consequently, L.K. has failed to show how counsel's alleged error in not having her bench warranted to the pretrial hearings prejudiced her defense as required by the second prong of the ***Strickland*** test. *See **In re M.S.**,* 115 S.W.3d at 545.

*ii. Extraordinary Circumstances*

L.K. next contends that counsel was ineffective because she told the trial court that L.K. could be in treatment for up to two years when L.K.'s treatment was for nine months. L.K. argues that "had counsel maintained the position throughout the spring hearings that [L.K.] was determined to regain custody of J.T.K. and was working voraciously towards that end, the Court may have granted a six month extension for [L.K.] to demonstrate the skills she learned in treatment after her homecoming in September."

Section 263.401 provides that in cases where the Department has filed a suit affecting the parent-child relationship, the trial court may retain the case beyond the one year dismissal date if it finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 263.401(b) (West 2008). In granting or denying an extension, the focus is on the needs of the child. ***In re A.J.M.**,* 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). A parent's involvement in completing conditions of her community supervision is generally considered to be the parent's fault and not an extraordinary circumstance. *See, e.g. **In re G.P.**,* No. 10-13-00062-CV, 2013 WL 2639243, at *1 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op.) ("A parent's incarceration is generally considered to be the parent's fault and not an extraordinary circumstance.") (citing ***In re A.J.M.**,* 375 S.W.3d at 604; ***In re M.G.D.**,* 108 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

L.K. argues that an extension would have allowed her to complete her service plan and demonstrate her progress and ability to parent J.T.K. But there was no requirement that a service plan be created due to the aggravated circumstances in this case. *See* TEX. FAM. CODE ANN. § 262.2015. L.K.'s parental rights were not terminated due to her failure to comply with a service plan, and L.K. admits that, at most, counsel's statement that L.K. could be in treatment for up to two years "may" have affected the trial court's decision on whether to grant an extension. As a result, L.K. has failed to satisfy the prejudice prong of the ***Strickland*** test and also fails to show that counsel's statement deprived her of a fair trial. *See **In re J.O.A.***, 283 S.W.3d at 342; ***In re M.S.***, 115 S.W.3d at 545.

### iii. Trial Strategy

In her last two arguments, L.K. contends that counsel was ineffective because she did not request a trial by jury and did not list any other witnesses to confirm her progress in the residential treatment facility. The court entered a standing scheduling and discovery order, which stated that a request for a jury trial must be received no less than sixty days prior to trial. In another scheduling order, the trial court set jury selection on the merits of the case for September 11, 2013. During an August 6, 2013 hearing, L.K.'s counsel informed the trial court as follows:

> The last I confirmed with my client, Your Honor, she asked for me to request a jury trial. I sent another letter to her this past week asking her to confirm that that was still—after reviewing the discovery and everything because I sent her a copy of all of it, if that was still her intentions and I've not heard back from her yet, Judge.

The record contains no oral or written request for a jury trial, and is silent on the issue of whether L.K.'s desire for a jury trial changed upon receiving the discovery that trial counsel sent her while she was in the treatment facility. Because the record is silent on this point, we will not engage in speculation to conclude counsel was ineffective for not requesting a jury trial. *See **In re L.C.W.***, 411 S.W.3d at 127.

L.K. next complains that trial counsel was ineffective because "no employer, no relatives, no friends, no roommate, [and] no staff from the treatment center" were called to testify to confirm her progress. The record shows that trial counsel introduced a certificate of completion verifying that L.K. successfully completed a "Parenting and Family Values" course designed to

7

change thinking and behavior about parenting. She also introduced a certificate that recommended L.K.'s graduation from the Recovery Center of Bowie County. However, the record illustrates that counsel's failure to call additional witnesses, particularly family members, may have been the result of sound trial strategy. *See In re H.R.M.*, 209 S.W.3d at 111.

L.K. testified that her family was in Houston, but she explained that she chose not to be close to her Houston family because "I just wanted a different environment, a change of my environment. I don't want to go back to the old places and people and stuff like that. I just want to do something different." When asked whether she would be more likely to use drugs if she went back to the "old places and old people," L.K. responded, "I feel like I'm just now strong enough to be around certain things and I just want to distance myself from a lot of negativity that brought me down. I don't want to be around it no more." When L.K. was cross-examined about her friend and roommate, "Denise," L.K. could not remember Denise's last name, and testified that Denise was not present for the termination trial.

When claiming ineffective assistance based on trial counsel's failure to call witnesses, the challenger must identify the witnesses who were available to testify and also show that the witnesses' testimony would have been of some benefit to the defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (citations omitted). Here, L.K. has not identified any witnesses who were available to testify at trial that would have proved beneficial to her defense. L.K. has failed to rebut the presumption that counsel's failure to call witnesses was the result of sound trial strategy. As a result, L.K. has not satisfied her burden under either prong of the *Strickland* test in addressing her two claims of ineffective assistance of counsel relating to trial strategy. *See In re H.R.M.*, 209 S.W.3d at 111; *In re M.S.*, 115 S.W.3d at 545.

## Conclusion

Although L.K. makes several arguments that trial counsel's performance was deficient, her claims are not firmly founded in the record. *See In re L.C.W.*, 411 S.W.3d at 127. L.K. has not shown that trial counsel's representation fell below an objective standard of reasonableness, nor has she shown that trial counsel's representation prejudiced her defense. *See Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064; *In re M.S.*, 115 S.W.3d at 545. After considering the circumstances surrounding this case, and focusing on whether trial counsel performed in a reasonably effective manner, we conclude that trial counsel's conduct was not so outrageous that

8

no competent attorney would have engaged in it.  *See In re H.R.M.*, 209 S.W.3d at 111; *In re M.S.*, 115 S.W.3d at 545.  Accordingly, we overrule L.K.'s first issue.


## BEST INTEREST OF THE CHILD

In her second issue, L.K. contends that it is in J.T.K.'s best interest to be reunited with her. We construe L.K.'s argument as a challenge to the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in J.T.K.'s best interest.

### Standard of Review

When, as here, the burden of proof is clear and convincing evidence, we conduct a legal sufficiency review by looking at all of the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true.  *In re J.F.C.*, 96 S.W.3d at 266.  We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so.  *Id.*  Thus, it follows that the reviewing court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but this does not mean that the reviewing court must disregard all evidence that does not support the finding.  *Id.*  Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.  *Id.*  If, after conducting our legal sufficiency review, we determine that no reasonable fact finder could form a firm belief or conviction that the matter which must be proven is true, then we will conclude that the evidence is legally insufficient.  *Id.*

When we conduct a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing.  *Id.*  Our inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations.  *Id.*  We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding.  *Id.*  If, when viewed in light of the entire record, the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient.  *Id.*  In finding evidence factually insufficient, the appellate court should detail why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of its finding.  *Id.* at 267.

The standard of review for legal and factual sufficiency challenges maintains a deferential standard for the fact finder's role, which means the trier of fact is the exclusive judge of the credibility of the witnesses and weight to be given their testimony. *In re C.H.*, 89 S.W.3d at 26-27; *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. *In re C.H.*, 89 S.W.3d at 26.

## Applicable Law

The party seeking termination must prove by clear and convincing evidence that termination of a parent's rights is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2). Parental rights may not be terminated merely because a child might be better off living elsewhere. *In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.). A parent's imprisonment does not automatically establish that termination is in the child's best interest, but a parent's criminal history and incarceration are factors that courts may consider in determining the best interest of a child. *See In re S.R.L.*, 243 S.W.3d 232, 236 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). The prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest, and there is a strong presumption that keeping a child with a parent is in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(a) (West 2008); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

In determining the best interest of the child, the courts consider a number of factors including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2008). Here, the applicable statutory factors include (1) the child's age and physical and mental vulnerabilities, (2) whether there is a history of substance abuse by the

10

child's family or others who have access to the child's home, and (3) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.*

The Department need not prove all of the statutory or *Holley* factors to show that termination of parental rights is in the child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights under section 161.001(1) is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

## Discussion

L.K. contends that the evidence is insufficient to show that termination of her parental rights is in J.T.K.'s best interest because she completed the tasks of the Department's original service plan on her own volition, there are multiple problems for J.T.K. at the foster home, and the foster mother is a single mother with no other help at home.[5] We begin our discussion by first recognizing that compliance with a service plan does not preclude a finding that termination is in the child's best interest. *See In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

At the time of trial, J.T.K. was days away from his second birthday. Due to L.K.'s incarceration and participation in the residential treatment center, J.T.K. spent more of his lifetime away from L.K. than with her. J.T.K.'s caseworker, Rachel Moore, testified that J.T.K. is bonded and interacts "great" with his foster mother, C.P. She described J.T.K.'s demeanor as "very happy and lovable," and testified that he appeared comfortable around C.P., even though he mostly clung to Moore during her last visit. Susan Lucas, a CASA volunteer, testified that

---

[5] L.K. contends that among the problems with the foster home is that J.T.K. suffered an unexplained black eye. L.K.'s argument, however, is based on evidence admitted at the initial permanency hearing and not at trial. Because our review is one of evidentiary sufficiency, we consider only evidence presented at trial. *See, e.g.*, *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

J.T.K. has been doing well in his placement with C.P., is happy, well fed, and that his medical needs are being taken care of.[6]

C.P. lives in a three bedroom, two bathroom home with three children—J.T.K., J. (her daughter), and her son. She adopted J. after L. K. relinquished her parental rights to J. in 2009. C.P. works at a daycare/head start facility where she is not required to pay for the care of the three children and makes approximately $1,400.00 each month. C.P.'s family lives in the area, has met J.T.K., and treats him like family. L.K. confirmed in her testimony that she did not have any objections to C.P. as a caretaker and that C.P. has taken good care of J.T.K. and J. Since J.T.K. has been in C.P.'s care, he has gotten along and plays with J., but there are times when the two siblings fight with each other—arguing and taking toys. C.P. wants to keep J.T.K. permanently, with adoption as her ultimate goal. When asked about a continued relationship with L.K., C.P. stated that she is willing to allow L.K. supervised visitations with J.T.K. and J.

L.K. is currently on community supervision, which requires her to, among other things, attend nine months of "after-care," and attend "NA" and "AA" meetings. L.K. explained that she is on a waiting list to attend the after-care classes, which will require attendance twice a week for two hours each time. L.K. lives in Texarkana with one of her coworkers, Denise, and Denise's two children—ages thirteen and eleven.[7] L.K. works between thirty-five and forty hours each week and makes about $1,000.00 a month. L.K. plans to put J.T.K. in daycare while she works, but at the time of trial, she had not conducted any research of Texarkana daycares. L.K. testified that if she gained custody of J.T.K., her manager would change her schedule to day shift and that her coworkers were also willing to help take care of J.T.K. L.K. testified that the coworkers who had offered to help with J.T.K. did not have any criminal history and that she knows this because they "communicate" and because "they have custody of kids and they dealt with a legal situation too. . . ."

L.K. testified that she started using drugs in 2004 and has been sober for a year and a half. Her drug of choice was PCP, but she also used alcohol and marijuana. Each of her children's removals arose out of circumstances relating to L.K.'s substance abuse. During two of her five pregnancies, L.K. used drugs, and shortly after J.T.K.'s birth, she relapsed.

---

[6] When J.T.K. first came into care, he battled numerous ear infections requiring regular doctor's visits, but was doing much better at the time of trial.

[7] As discussed in the previous section of this opinion, L.K. has no family in Texarkana.

L.K. has a history of intoxication offenses—one driving while intoxicated charge in Houston, two driving while intoxicated charges in Lufkin, and one public intoxication incident that occurred while L.K. was holding one of her children in the middle of an intersection. In one of the Lufkin offenses, J.T.K. was in the vehicle with L.K.

L.K. testified that her parental rights were terminated to her four oldest children because she was "sick" from her drug use. L.K. explained that she "gave [two of her children] up voluntarily" because "I felt I was still sick and I felt it was best for my daughter to be where she was because I felt I wouldn't take care of her at the time."[8]

L.K. testified that unlike the times before, she now has the tools she needs to stay sober, deal with stressful situations, and parent J.T.K. It is undisputed that L.K. has been sober for a year and a half and that she successfully graduated from the residential treatment facility. During her time at the treatment facility, L.K. received grief and drug intervention counseling. She also took classes on relapse prevention, healthy coping, and self-improvement. At trial, L.K. testified that her parental rights to J.T.K. should not be terminated because she "just sees things different now" than she did with her four other children and that she "just want[s] the opportunity to prove that I can be a good mother to my son and that I can remain clean and sober."

Viewing this evidence, along with the evidence discussed in our review of L.K.'s claim of ineffective assistance of counsel, in the light most favorable to the finding, we conclude that the fact finder could reasonably have formed a firm conviction that termination of L.K.'s parental rights was in J.T.K.'s best interest. *See **J.F.C.***, 96 S.W.3d at 266. Viewing the record as a whole, we conclude that the fact finder could reasonably have formed a firm conviction that termination of L.K.'s parental rights was in J.T.K.'s best interest. *See **id**.* Furthermore, we conclude that the evidence weighing against termination (L.K.'s sobriety) is not so significant to conclude that the fact finder's decision was unreasonable due to the termination of L.K.'s parental rights to her four oldest children, her history of substance abuse, and her criminal history involving intoxication offenses. *See **id**.* Accordingly, we hold that the evidence of J.T.K.'s best interest is legally and factually sufficient to support the trial court's best interest finding. We overrule L.K.'s second issue.

---

[8] These children are identified in the record as "S." and "J." J. was adopted by, and currently lives with, C.P.; S. lives with her aunt in Houston, Texas.

## DISPOSITION

Having overruled L.K.'s first and second issues, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 19, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 19, 2014**

**NO. 12-13-00339-CV**

**IN THE INTEREST OF J. T. K., A CHILD**

Appeal from the County Court at Law #2

of Angelina County, Texas (Tr.Ct.No. CV-01773-12-09)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*