**Ex parte Rodney John RAMIREZ, Applicant.**

No. WR–25057–06.

Court of Criminal Appeals of Texas.

Dec. 12, 2007.

Matthew Mateo Dekoatz, for appellant.

Tom Darnold, for state.

### *ORDER*

PER CURIAM.

We conclude that Rodney John Ramirez is not entitled to habeas relief because the record does not show that his trial counsel rendered ineffective assistance.

### I. Procedural Background

Ramirez was convicted by a jury of two counts of burglary of a habitation. The trial judge assessed his punishment at eighty-one years' imprisonment. Ramirez appealed and, in an unpublished opinion, the Eighth Court of Appeals affirmed the judgment of the trial court.[1]

1. *Ramirez v. State,* No. 08–99–00082–CR, 2000 WL 1367952 (Tex.App.-El Paso Sept. 21,

### II. Factual Background

Setting out the facts of the burglary offense, the court of appeals stated, in relevant part:

During the evening of May 20, 1998, Evelyn McCullough was called to her front door of her apartment by an individual whom she later identified as [Ramirez]. [Ramirez] told her that her neighbor, Ruth Hansen, was on the floor and needed help. Hansen, an elderly woman who lived directly across the hall from McCullough, was frail and her weak health required that she constantly breathe oxygen supplied by a tank. Upon hearing this news, McCullough unlocked her door to go help Hansen. When she opened the door, [Ramirez] grabbed her and forced his way into the apartment. Once inside, [Ramirez] assaulted McCullough, grabbed her purse, and ran away.

Yet another neighbor, Linda Rasmussen, testified that she was awakened by a banging noise and went to investigate. She located McCullough outside on the sidewalk. McCullough told her that a man had come to her door and said that something was wrong with Hansen. Rasmussen went to check on Hansen. She found that the front door was unlocked and that Hansen had been confined in her bedroom. Hansen asked Rasmussen to remove the barricade that was blocking her bedroom door and explained that a man had entered her apartment, asked for money, and threatened her with a weapon. When Hansen did not comply, the man removed her oxygen nose piece, picked her up, carried her to her bedroom, and then barricaded the door.

2000, pet. ref'd) (not designated for publication).

. . .

Hansen did not testify at trial. The State represented that her health problems did not permit her to appear. As a consequence, the State was unable to obtain an in-court identification of [Ramirez], or to admit into evidence Hansen's alleged out-of-court identification.[2]

## III. Habeas Proceedings

### A. Ramirez's Application for a Writ of Habeas Corpus

Ramirez filed the instant application for a writ of habeas corpus challenging his convictions for burglary. Among other things, Ramirez raises numerous claims of ineffective assistance of trial counsel. The trial judge has recommended that we grant relief on three of these claims. In two of those claims, Ramirez alleges that his trial attorney was ineffective for failing to call two witnesses to testify at trial. First, Ramirez faults counsel for failing to call Hansen to testify even though, according to Ramirez, he informed his attorney that Hansen could not identify him as the perpetrator. Ramirez claims that Hansen could not identify him in a pre-trial photo line-up and that Officer Diaz became frustrated and drew a circle around and placed an "X" on Ramirez's picture to suggest to Hansen that Ramirez was the perpetrator. Ramirez further asserts that, contrary to the representations made by the prosecutor at trial, Hansen told the State that she would not be able to attend the trial because she could not identify Ramirez as the perpetrator. Ramirez alleges that if Hansen had been called to testify, the outcome of the trial would have been different.

Next, Ramirez claims that counsel was ineffective for failing to call Romelia Rivera to testify. Ramirez states that Rivera, an employee of the El Paso Roads and Bridges Department, was available to testify that Hansen could not identify Ramirez as the perpetrator. An unsigned, unsworn statement allegedly made by Rivera to her attorney is included in the habeas record as State's Exhibit C:

This statement is in reference to a conversation between Rodney Ramirez and Ms. Ruth Hansen. He (Rodney Ramirez) called me (Romelia Rivera) and asked me if I could connect him to a number because he needed to talk to this lady. When she answered the phone he (Rodney Ramirez) said this is Detective Bargados, I am calling in reference to the person who broke into your home. Are you sure that was him? She (Ruth Hansen) said, I'm not so sure, then I put the phone down to answer a call, I then came back to the phone to see if he was done and I heard her say something about someone that was circled, I then put the phone back down again to answer another call. After a while I picked up the phone and asked if he was done, he then asked me if I heard anything and I said I heard the first part and the part about someone in a circle. I then told him that I had to go and I hung up the phone.

Finally, in the third claim found meritorious by the trial judge, Ramirez faults counsel for failing to review a surveillance video from the Diamond Shamrock convenience store. According to the record, McCullough's credit card was used at the Diamond Shamrock shortly after the offenses. Ramirez contends that when testifying, Officer Diaz intimated that Ramirez could be identified using McCullough's credit card on the video. Ramirez alleges that this conflicted with Officer Higgason's testimony that no police personnel could identify Ramirez on the video. Ramirez also alleges that the video, which was not

**2.** *Id.* at *1–3.

admitted into evidence, showed that it was another person using the credit card and that counsel should have reviewed the video before trial so he could cross-examine Officer Diaz. He further contends that counsel should have offered the video as evidence in his defense.

## B. The State's Answer

Responding to Ramirez's claim concerning Hansen, the State first contends that Ramirez's claim "is based on a faulty factual premise." The State maintains that Officer Diaz did not conduct the photo line-up with Hansen. In support of this assertion, the State has provided police reports that indicate that two other officers conducted the line-up. Next, the State asserts that Hansen was not called to testify by the State due to her poor health. In support of this assertion, the State cites to the trial record and a sworn affidavit provided by the prosecutor. In her affidavit, the prosecutor states, in relevant part:

Ms. Hansen at the time of trial was approximately eighty-six (86) years of age and constantly on oxygen. I visited with Ms. Hansen the evening before she would have testified to explain trial procedures to her. She became very agitated, when I was speaking with her, about the possibility of having to go to the Courthouse and stated she would have to get up at approximately midnight to be able to get ready and to be at Court by 8:30.

I explained to Ms. Hansen one of the questions I would ask her is do you see the individual who did this to you in Court, if you see the person say yes and point the person out, if you don't see the person then inform me of the circumstances. As a potential exhibit about which she would need to testify in front of the jury, I would have taken the case file with me and shown her the photo lineup that the police had shown her. If Ms. Hansen had informed me that she

could not nor identified the person who committed this crime, I would have informed the Defense Attorney of this information.

After speaking with Ms. Hansen about the case, I made the decision based on her age, health status and mental status not to call her as a witness.

As part of my preparation for trial, I interviewed the officers in the case in regards to their actions and all evidence they collected. The photo lineup in which Ms. Hansen identifies Ramirez as the perpetrator of the offense would have been one of these items. I never received any information or indication that Ms. Hansen had not been able to identify Ramirez when she was originally shown the photo line-up by the officers. I never had any reason to believe the photo lineup was not conducted properly. If I had received such information, I would have informed the Defense Attorney of this information.

The State also addressed Ramirez's allegation concerning Rivera. The State submits that Rivera's statement shows that she did not overhear the entire conversation between Ramirez and Hansen and that she did not hear Hanson state that she could not identify Ramirez.

Finally, in response to Ramirez's claim about the videotape from the Diamond Shamrock, the State contends that Officer Diaz's testimony did not conflict with Officer Higgason's testimony because Officer Higgason never testified that no police personnel recognized Ramirez on the video.

## C. Trial Counsel's Response

Trial counsel has submitted a sworn affidavit responding to Ramirez's allegations. Addressing Ramirez's claim about his failure to call Hansen as a witness, counsel states: "All information Mr. Ramirez re-

layed to me was analyzed and utilized for his defense. Although I cannot recall specifically Mr. Ramirez's allegations with regards to Ruth Hansen, as is my standard practice all witnesses were analyzed with an eye towards possible defenses and impact on the trial." In response to Ramirez's claim concerning Rivera, counsel states that he does "not specifically recall any statements Mr. Ramirez may have made regarding conversations Romelia Rivera may have overheard." Finally, counsel provided the following response to Ramirez's claim that he was ineffective for failing to review the videotape from the Diamond Shamrock:

> It is my standard procedure to evaluate all discovery provided to me by the District Attorney, including videotapes. I cannot specifically recall the details of the video, due to the fact that it was so long ago, however, I routinely review all evidence with an eye to its' [sic] impact, admissibility, and relevance. Any decisions made regarding this tape were made with trial tactics in mind.

## D. The Trial Judge's Proposed Findings and Order

After considering the arguments offered by Ramirez and the State and assessing the credibility of the evidence, the trial judge has determined that counsel had no rational basis for failing to:

(1) call Ruth Hansen to testify at trial;

(2) call Romelia Rivera to testify at trial; and

(3) review the video which purportedly identified Defendant–Applicant.

In closing, the trial judge states: "For these reasons, and because *identity* was the key issue, Applicant should be provided a new trial, and it is recommended that relief be granted under his writ application."

## IV. Analysis

■ To obtain habeas relief for a claim of ineffective assistance of trial counsel, an applicant must meet the two-part framework established by the United States Supreme Court in *Strickland v. Washington.*[3] Under the first part of the *Strickland* framework, an applicant must demonstrate, by a preponderance of the evidence, "that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness."[4] If an applicant can demonstrate deficient performance, under the second part of the *Strickland* standard, an applicant must show resulting prejudice by a preponderance of the evidence.[5] To prove prejudice, an applicant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[6]

■ When reviewing a trial judge's fact-findings, we afford almost total deference to those findings when they are based on an assessment of credibility and demeanor.[7] Additionally, we will generally accept a trial judge's findings of fact when they are supported by the record.[8] How-

3. *Ex parte White,* 160 S.W.3d 46, 49 (Tex. Crim.App.2004) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

4. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim.App.1999) (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996); *Ex Parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993)).

5. *Id.* (citing *McFarland,* 928 S.W.2d at 500).

6. *Id.*

7. *Ex parte White,* 160 S.W.3d at 50.

8. *Ex parte Amezquita,* 223 S.W.3d 363, 367 (Tex.Crim.App.2006) (citing *Ex parte Evans,* 964 S.W.2d 643, 648 (Tex.Crim.App.1998); *Ex parte Jarrett,* 891 S.W.2d 935, 940 (Tex. Crim.App.1994)).

ever, we review a trial judge's conclusions of law *de novo.*[9]

Giving proper deference to the trial judge's implicit findings of fact, we conclude that the trial judge incorrectly determined that Ramirez was denied effective assistance of counsel at trial. The record before us does not support Ramirez's allegations and, as a result, Ramirez has failed to satisfy his burden of proof.

When challenging an attorney's failure to call a particular witness, an "applicant must show that [the witness] had been available to testify and that his testimony would have been of some benefit to the defense."[10] Because Ramirez's claim concerning Hansen is intertwined with Ramirez's claim involving Rivera, we begin by addressing Ramirez's claim that his trial attorney was ineffective for failing to call Rivera to testify.

Ramirez has not shown that Rivera was available to testify or that her testimony would have been favorable. Because the statement allegedly provided by Rivera is not sworn or signed, it cannot be said with any certainty that Rivera made the statement. However, even if we were to assume that the statement was made by Rivera, Rivera does not state that she was available to testify at Ramirez's trial. And, more importantly, the statement contains no information that would establish that Ramirez was actually speaking with Hansen. Rivera does not state the name of the "lady" Ramirez needed to speak to or what telephone number Ramirez directed her to dial. Rivera does not state that she could identify Hansen's voice or that Hansen identified herself when she answered the phone. Finally, even if we

were to assume that these deficiencies were nonexistent and that Rivera could have provided favorable testimony, her testimony would have been admissible only for purposes of impeachment if Hansen testified that she identified Ramirez as the perpetrator. And any benefit that Ramirez would have gained by having Rivera testify would likely have been overshadowed by the fact that Ramirez falsely identified himself as a law enforcement officer when he called Hansen. Based on the foregoing reasons, we cannot conclude that Ramirez's attorney was ineffective for failing to call Rivera to testify.

With regard to Ramirez's claim concerning counsel's failure to call Hansen to testify at trial, Ramirez has not shown that her testimony would have benefited his defense. Ramirez has failed to show Hansen was unable to identify him as the perpetrator. As shown above, Rivera's alleged statement does not establish that Hansen could not identify Ramirez. Moreover, Ramirez offers no evidence to support his claim that Officer Diaz circled his picture or marked an "X" on his picture in an effort to suggest to Hansen that Ramirez was the perpetrator. Ramirez also fails to offer any evidence showing that the prosecutor lied when she told the trial judge that the State would not call Hansen to testify due to her poor health. To put it simply, Ramirez's claim concerning Hansen's inability to identify him as the perpetrator is based on pure speculation. Ramirez therefore has not shown that his trial attorney was ineffective.

Finally, with regard to the claim concerning the surveillance video from the Diamond Shamrock, Ramirez has not established that it did not show him using McCullough's credit card.[11] In fact, we

---

9. *Ex parte Brown,* 158 S.W.3d 449, 453 (Tex. Crim.App.2005).

10. *Ex parte White,* 160 S.W.3d at 52 (citing *King v. State,* 649 S.W.2d 42, 44 (Tex.Crim. App.1983)).

11. *See Wilkerson v. State,* 726 S.W.2d 542, 550 (Tex.Crim.App.1986) (finding "there is nothing in the record to show that potential defenses were precluded or that a visit to the scene would have made any difference in the

have no idea what the video recorded. As a result, he has failed to show that the video would have enabled him to impeach Officer Diaz when Officer Diaz allegedly intimated that Ramirez could be identified on the video. Ramirez has not demonstrated that he was prejudiced by counsel's failure to review the tape or offer it into evidence.

## Conclusion

Because Ramirez has not sustained his burden of establishing that he is entitled to habeas relief, we disagree with the trial judge's recommendation and deny relief.

defense's case[;] the failure of the attorneys to visit the scene does not militate against a finding of reasonable representation.").