

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00064-CR

KHYREE CARSON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2014-0376-F

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found appellant Khyree Carson guilty of the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02 (West 2011). Carson pleaded true to an enhancement paragraph, the jury assessed his punishment at thirteen years' confinement, and the trial court sentenced him accordingly. Carson

---

[1]*See* Tex. R. App. P. 47.4.

perfected this appeal; he raises one issue claiming ineffective assistance of counsel.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL NOT ESTABLISHED

Carson argues that he was denied effective assistance of counsel because his trial counsel failed to request an "*Alford*[2] hearing" and failed to subpoena a witness.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the

---

[2]*North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

2

particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

### B. Ineffectiveness Not Raised in Motion for New Trial

Although Carson filed a motion for new trial, he did not complain of ineffective assistance in his motion. No hearing was held on the motion, and it was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). Consequently, any trial strategy that Carson's trial counsel may have had for her challenged actions is not contained in the record. Generally, a silent record that provides no

explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). As noted above, trial counsel "should ordinarily be afforded an opportunity to explain [her] actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593.

### C. Trial Counsel Was Not Ineffective for Failing to Request an "*Alford* Hearing"

Carson reached a plea agreement with the State and executed the necessary paperwork. At the plea hearing, however, after the trial court had admonished Carson of his rights, explained Carson's waiver of those rights, and confirmed that Carson had read through and signed the plea paperwork, the following colloquy occurred:

> THE COURT: Are you pleading guilty because you are, in fact, guilty, and for no other reason?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: No, sir. I'm just pleading guilty so I can go on and serve my time, sir.
>
> THE COURT: So you're not guilty of the offense?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. We'll see you for trial next Monday, okay?
>
> THE DEFENDANT: All right.
>
> THE COURT: Sir, you are ordered to appear on Monday a week from today for trial. The last thing I'm ever going to do is take a plea

4

from someone that says they're not guilty. That would be violating my oath, and it is a travesty of the justice system to lock people up when they're not guilty of what they're accused of having done.

THE DEFENDANT: Yes, sir.

THE COURT: So I'm not sure how we got to this point, but sometimes people just change their minds at the last minute. Whatever the case may be, we're not going to proceed with the plea today, and you are free to go. We will see you next Monday.

Carson argues that when the trial court rejected his plea at the plea hearing, his trial counsel "should have recognized that holding an *Alford* hearing was in the client's best interest" and should have "requested a hearing so that the State could present the evidence it intended to introduce at trial regarding the Defendant's guilt so the trial court could fulfill its proper function to determine that Defendant's plea was being entered intelligently, knowingly, and voluntarily despite Defendant's assertions of innocence."

In *Alford*, the defendant pleaded guilty to second-degree murder pursuant to a plea agreement so that he could avoid being tried for first-degree murder and facing the death penalty. 400 U.S. at 28–29, 91 S. Ct. at 162–63. Before the trial court finally accepted Alford's plea, the court heard the sworn testimony of a police officer who summarized the State's case, heard the testimony of two other witnesses, and heard the testimony of Alford. *Id.* at 28, 91 S. Ct. at 162. Although Alford testified he had not committed the murder and was pleading guilty to avoid facing the death penalty, the testimony from the witnesses was that Alford took his gun from his house, stated his intention to kill the victim, and

5

returned home with the declaration that he had carried out the killing. *Id.* at 28, 91 S. Ct. at 162. After Alford denied his guilt on the witness stand and before accepting the plea bargain, the trial court inquired whether Alford still wanted to plead guilty. *Id.* at 28–29, 91 S. Ct. at 162–63. Alford said, "Yes, sir." *Id.* at 29, 91 S. Ct. at 163.

After his conviction for second-degree murder, Alford sought habeas corpus relief, claiming his guilty plea was coerced. *Id.*, 91 S. Ct. at 163. The Supreme Court explained,

> If Alford's statements were to be credited as sincere assertions of his innocence, there obviously existed a factual and legal dispute between him and the State. Without more, it might be argued that the conviction entered on his guilty plea was invalid, since his assertion of innocence negatived any admission of guilt.

*Id.* at 32, 91 S. Ct. at 165. But because the trial court had heard an account of the events occurring on the night of the murder, including from Alford's acquaintances that Alford had departed from his home with his gun stating his intention to kill and that he had later declared that he had carried out his intention, and because Alford never wavered in his desire to plead guilty, the Supreme Court compared Alford's plea and circumstances to a plea of nolo contendere. *Id.* at 36, 91 S. Ct. at 167. Because (as in a plea of nolo contendere) the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling to expressly admit his guilt, but who, faced with grim alternatives, is willing to waive his trial and accept the sentence, the Supreme Court likewise held that under the facts presented to the trial court in Alford's

6

case, an express admission of guilt was not a constitutional requisite to the imposition of criminal penalty on Alford and that Alford's guilty plea was therefore not involuntarily made despite his professed belief in his innocence. *Id.* at 38, 91 S. Ct. at 168.

Trial judges possess broad discretion to refuse a plea even when there is a plea agreement between the State and the defendant. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a)(2) (West Supp. 2015); *Rodriguez v. State*, 470 S.W.3d 823, 828 (Tex. Crim. App. 2015); *Roberts v. State*, No. 03-96-00481-CR, 1998 WL 10276, at *1 (Tex. App.—Austin Jan. 15, 1998, pet. ref'd) (not designated for publication) (recognizing "trial court has absolute discretion in every case to reject a plea bargain agreement entered into between the state and the defense"). And a trial court acts within its discretion in rejecting a plea agreement when a defendant claims he did not commit the offense. *See Allen v. State*, 827 S.W.2d 69, 70 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding trial court did not abuse its discretion by rejecting plea agreement when during plea hearing defendant testified that he did not remember committing the offense); *see also Roberts*, 1998 WL 10276, at *1 (holding trial court did not abuse its discretion by rejecting plea agreement when defendant vacillated in his admission of guilt to the offense).

Carson claimed he did not commit the offense of burglary of a habitation. Accordingly, the trial court acted within its discretion in rejecting his plea agreement. *See Allen*, 827 S.W.2d at 70; *see also Roberts*, 1998 WL 10276, at

7

*1. And because the trial court here *rejected* Carson's guilty plea after Carson claimed he did not commit the offense—as opposed to in *Alford* where the trial court *accepted* Alford's guilty plea despite his proclamations that he did not commit the offense—the holdings of *Alford* are inapplicable here. An examination of whether Carson made an intelligent, knowing, and voluntary plea of guilty is not necessary because the trial court rejected Carson's plea of guilty and Carson was found guilty by a jury after a trial. Consequently, we hold that Carson's trial counsel's failure to request an "*Alford* hearing" was not unreasonable under the circumstances, nor did it fall below prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. We overrule this portion of Carson's issue.

## D. Trial Counsel Was Not Ineffective for Failing to Subpoena Witness

In the remainder of Carson's sole issue, he argues that his trial counsel was ineffective for failing to subpoena Detective Airaghi. Detective Airaghi investigated the offense and interviewed the complainant two days after the incident. The State gave notice to the Dallas Police Department[3] for Detective Airaghi to appear in court but did not call him to testify, and any report he may have made was not admitted into evidence.

---

[3]The trial court noted that it was common practice for the State to send notice to the police department for an officer to appear in court rather than subpoena a police officer.

A claim of ineffectiveness based upon trial counsel's failure to call a particular witness cannot succeed absent a showing that the witness was available to testify and that his testimony would have been of some benefit to the defense. *See Ex parte Ramirez v. State*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). Similarly, trial counsel's failure to present certain evidence is immaterial absent a showing that the evidence was available and that the evidence would have affected the outcome of the proceeding. *See King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).

Here, Carson's trial counsel did not intend to call Detective Airaghi to testify until after hearing the complainant's testimony. When trial counsel notified the trial court on the second day of the three-day trial that she wanted to call Detective Airaghi to testify, the trial court recessed the court at 2:55 p.m. on February 3, 2015, and offered to authorize payment for a private investigator to assist trial counsel with locating and serving a subpoena on Detective Airaghi. The following morning, an investigator for the District Attorney's office and Carson's trial counsel testified that Detective Airaghi was not available to testify because he had been on medical leave for all of January 2015 and would not return to work until February 11, 2015. And although Carson hoped to use

Detective Airaghi's testimony to impeach the complainant's testimony,[4] the record contains no evidence as to what Detective Airaghi's testimony would have been.

Because Carson has not shown that Detective Airaghi was available to testify or that Detective Airaghi's testimony would have been favorable to the defense, Carson has not demonstrated that his trial counsel was ineffective for failing to subpoena Detective Airaghi. *See Ramirez*, 280 S.W.3d at 853 (holding that applicant had failed to show that his trial attorney was ineffective for failing to call a witness because applicant failed to show that witness was available to testify or that her testimony would have been favorable to applicant's case); *cf. Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding that trial court did not err by denying hearing on motion for new trial regarding alleged ineffective assistance in failing to investigate and subpoena witnesses because appellant's affidavit did not state what the witnesses' testimony would have been and stated only that the witnesses "could have provided crucial exculpatory information"). Based on the record before us, in light of the strong presumption of reasonable professional assistance by trial counsel, and in the absence of any opportunity for trial counsel to explain her strategy for not subpoenaing Detective Airaghi, we cannot say that Carson has met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below

---

[4]Trial counsel stated that Detective Airaghi's testimony was "just for impeachment purposes of the complainant. It's not really substantive in the sense that it's not going to make any difference as to Mr. Carson's position."

the standard of prevailing professional norms.  *See Thompson*, 9 S.W.3d at 813.

We therefore overrule the remainder of Carson's sole issue.[5]

### III. CONCLUSION

Having overruled Carson's sole issue, we affirm the trial court's judgment.


/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

SUDDERTH, J., filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 4, 2016

---

[5]Because Carson has not satisfied the deficient-performance prong of *Strickland*, we need not address the prejudice prong.  466 U.S. at 697, 104 S. Ct. at 2069 (stating that there is no requirement that a court approach the two-pronged inquiry in any particular order or even address both components of the inquiry if the defendant makes an insufficient showing on one component).

11