

# NUMBER 13-23-00373-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JESUS CONTRERAS,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

## ON APPEAL FROM THE 139TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

A jury convicted appellant Jesus Contreras of five counts of indecency with a child by sexual contact, second-degree felonies, and one count of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.11(d), 22.021(e). The trial court sentenced Contreras to ten years' imprisonment for each count and ordered the sentences to run concurrently. By two issues, Contreras argues that: (1) the evidence

was insufficient to support his convictions; and (2) his counsel rendered ineffective assistance. We affirm.

## I. BACKGROUND

On September 13, 2022, a grand jury returned an indictment that alleged the following:

- Count One: On or about December 14, 2002, Contreras intentionally or knowingly, and with the intent to arouse or gratify his own sexual desire, engaged in sexual contact with Jane Doe[1] by causing Doe to touch his genitals;

- Count Two: On or about December 14, 2002, Contreras intentionally or knowingly caused the sexual organ of Doe, who was younger than fourteen at the time, to contact his mouth;

- Count Three: On or about April 14, 2005, Contreras intentionally or knowingly, and with the intent to arouse or gratify his own sexual desire, engaged in sexual contact with Doe by touching her genitals;

- Count Four: On or about April 28, 2005, Contreras intentionally or knowingly, and with the intent to arouse or gratify his own sexual desire, engaged in sexual contact with Doe by touching her genitals;

- Count Five: On or about April 28, 2005, Contreras intentionally or knowingly, and with the intent to arouse or gratify his own sexual desire, engaged in sexual contact with Doe by causing her to touch his genitals; and

- Count Six: On or about June 14, 2009, Contreras intentionally or knowingly, and with the intent to arouse or gratify his own sexual desire, engaged in sexual contact with Doe by causing her to touch his genitals.

Trial commenced on June 6, 2023. Doe, who was twenty-six at the time of trial, testified that Contreras was her former stepfather. The first incident of sexual abuse Doe

---

[1] To protect the identity of the complainant, we refer to her by the pseudonym given to her in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 58.102(a).

2

remembered was when she "was five," which would have been around 2002. She "was laying down on the bed," Contreras "entered" the room, and then "he kind of like spooned [her]." Doe remembered "he was pressing his penis against [her] butt." He then "carried [her] to the master bed[room]." In that room, Contreras "removed [her] pants and [her] underwear." Contreras looked at Doe's "private part," told her that "it looked precious," and then he "kissed [her] private part and he told [her] that [they] need to protect it."

Doe recalled that when she was "maybe seven or eight or around there," Contreras came to live with her family. Doe remembered another incident that happened "during the summer." Doe testified that she fell asleep watching cartoons and "[t]he next thing I know I'm waking up and he is under my underwear in my pants and he's touching my private area." Doe explained this went on for about "five minutes."

Another incident happened when Doe was "around the same age." Doe was in bed and Contreras asked if she "wanted to hear a bedtime story." He laid down in bed with her, started "spooning" her, and touched her "private area." Doe remembered that she could feel "[h]is penis" during this incident.

Doe testified that, on another occasion, she and Contreras watched a movie together that contained a sex scene. As they were watching it, Contreras took his penis out and placed Doe's hand on it. Doe also discussed an incident that occurred in Contreras's truck. Doe asked Contreras for school supplies. In response, "He said, okay, but like what are you going to do for me?" Doe remembered that he then touched her "breast inside [her] shirt." Doe testified that the last incident of sexual abuse occurred when she was around twelve years old, which would have been around 2009.

3

Contreras testified in his own defense and denied that the abuse ever occurred.[2] The jury found Contreras guilty, and the trial court sentenced Contreras as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Contreras argues the evidence was legally insufficient to support his convictions because: (1) the exact dates on which the incidents occurred were unclear; and (2) Doe's testimony was unreliable and uncorroborated.

### A. Standard of Review & Applicable Law

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). "[W]hen reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

---

[2] Although several more witnesses testified, we limit our recitation of the testimony elicited at trial to that which is necessary to resolve the issues presented on appeal. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

To support the five counts of indecency with a child by sexual contact, the hypothetically correct jury charge required the State to prove that Contreras intentionally or knowingly and with the intent to arouse or gratify his own sexual desire: (Counts One, Five, and Six) caused Doe to touch his genitals; and (Counts Three and Four) touched Doe's genitals. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c). To support the single count of aggravated sexual assault of a child (Count Two), the State was required to show that Contreras intentionally or knowingly caused Doe's sexual organ to contact his mouth when she was younger than fourteen. *See id.* § 22.021(a)(1)(B)(iii), (a)(2)(B).

## B.    Analysis

Contreras first attacks the sufficiency of the evidence because no witness "could say, with at least a certain amount of certainty[,] the date when these incidents took place." But "[i]t is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *cf. Bonilla v. State*, 452 S.W.3d 811, 818 (Tex. Crim. App. 2014) ("[T]he 'on or about' date of January 1, 1995—alleged in the indictment . . . covered all acts of sexual molestation that occurred between 1994 and April 16, 2009, the date of the indictment."). In that same vein, victims of child sexual abuse need not recite the exact dates on which the acts occurred to support a conviction, so long as there is sufficient evidence to indicate that the dates occurred prior to the presentment of the indictment and after the relevant statutory limitation period. *See, e.g.*, *Perez v. State*, No. 13-22-00292-CR, 2024 WL 715326, at *4 (Tex. App.—Corpus

5

Christi–Edinburg Feb. 22, 2024, no pet.); *Pelcastre v. State*, 654 S.W.3d 579, 584 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (explaining that exact dates are not required to support continuous sexual abuse of a child conviction). Here, Doe testified that the sexual abuse occurred when she was between the ages of five and twelve, which roughly corresponded to the abuse occurring between the years 2002 and 2009. We conclude that this testimony was sufficient to support the jury's implicit finding that the abuse occurred "on or about" the dates alleged in the indictment. *See Sledge*, 953 S.W.2d at 256; *Pelcastre*, 654 S.W.3d at 584.

Contreras next argues that Doe's testimony was uncorroborated, and therefore, according to him, insufficient. The uncorroborated testimony of a victim of child sexual abuse is generally sufficient to support a conviction. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1). Contreras argues that this principle should only apply to "actual minor children, and not [to] adults recalling events that took place 10, 15, or 20 years ago." But Contreras does not cite to any authority that proscribes adult victims of child sexual abuse from benefiting from the statute's parameters, and we are unable to find any. Indeed, the plain language of the statute applies to "the victim of the sexual offense" without placing any limitation on how old the victim must be at the time of their testimony. *See id.*

Doe testified to five acts of indecency with a child by sexual contact and one act of aggravated sexual assault of a child that meet the allegations described in the indictment. Specifically, Doe testified that, while she was between the ages of five and twelve, Contreras touched her vagina on two occasions, he caused her to make contact with his penis on three occasions, and he kissed her vagina. *See* TEX. PENAL CODE ANN.

6

§§ 21.11(a)(1), (c), 22.021(a)(1)(B)(iii). Although Contreras disputes the reliability of Doe's testimony, "the jury is the sole judge of the witnesses' credibility and the weight to be given [to] their testimony." *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Viewing this testimony in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to sustain Contreras's convictions. *See id.*; *Curlee*, 620 S.W.3d at 778. Accordingly, we overrule his first issue.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Contreras argues that his trial counsel rendered ineffective assistance of counsel.

### A.   Standard of Review & Applicable Law

"Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both prongs of the *Strickland* test are judged by the totality of the circumstances as they existed at trial, not through 20/20 hindsight." *Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012) (internal footnote omitted). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Hart*, 667 S.W.3d at 781. "Appellate review of defense counsel's

representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "We will not second-guess legitimate strategic or tactical decisions made by counsel in the midst of trial." *Williams*, 301 S.W.3d at 687. "Ordinarily, trial counsel should be afforded an opportunity to explain his conduct before being denounced as ineffective." *Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App. 2022), *cert. denied*, 144 S.Ct. 1166 (U.S. May 13, 2024). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

"Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). We determine which measuring stick to deploy depending on the alleged effect of the attorney error before us. *Id.* For example, "if the [attorney's] deficient performance might have caused the defendant to waive a proceeding he was otherwise entitled to, then a reasonable probability that the deficient performance caused the waiver fulfills the prejudice requirement." *Id.* If, on the other hand, appellant argues that trial counsel's deficient performance resulted in the factfinder's guilty verdict or punishment assessment, he must show a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Id.*; *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). "A reasonable probability is 'a probability sufficient to undermine confidence in the

8

outcome.'" *Perez*, 310 S.W.3d at 894 (quoting *Strickland*, 466 U.S. at 694).

**B.      Analysis**

Contreras argues that his trial counsel provided ineffective assistance by failing to: (1) preserve a complaint regarding Contreras's right to confront the witnesses against him; (2) call a key fact witness; (3) call an expert witness on the issue of memory recall and panic attacks; (4) inform Contreras that he was not eligible for probation from the trial court; and (5) request an outcry hearing. We address these contentions in order.

First, Contreras argues that his attorney was ineffective for failing to make a Confrontation Clause objection to the State's failure to secure Officer Orlando Bazan as a witness. Doe made her initial police report to Officer Bazan of the Weslaco Police Department. Afterward, Detective Jorge Torres, also of the Weslaco Police Department, took over the investigation. A subpoena was issued but never served on Officer Bazan. Trial counsel objected to Officer Bazan's absence on the basis that he was "a material witness," as Doe's statements to Officer Bazan were allegedly inconsistent with those made to Detective Torres.

On appeal, Contreras argues that Officer Bazan "was a key witness" who could "further help impeach the victim's credibility," and counsel therefore should have objected on Confrontation Clause grounds. But it is the Compulsory Process Clause, not the Confrontation Clause, that protects a defendant's right to secure the presence of witnesses who will testify in his favor. *See* U.S. CONST. amend. VI (providing a criminal defendant with the right "to be confronted with the witnesses against him" and, separately, "to have compulsory process for obtaining witnesses in his favor"); *Melendez-Diaz v.*

9

*Massachusetts*, 557 U.S. 305, 313 (2009) ("While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses 'against him,' the Compulsory Process Clause guarantees a defendant the right to call witnesses 'in his favor.'"). And in any event, the record is silent regarding why counsel failed to make a Confrontation Clause or Compulsory Process Clause objection. Accordingly, Contreras has failed to meet his burden under *Strickland*. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) ("We do not know why counsel failed to raise a Confrontation Clause objection because the record is silent on the matter. . . . Consequently, we conclude that the record fails to show deficient performance.").

Second, Contreras argues that counsel should have called Mary Contreras, who would have testified that Doe's mother "told [Mary] that they ([Doe's] family) were going to do everything to 'get back' at [Contreras] for his having left her." But "failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Perez*, 310 S.W.3d at 894 (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); *see Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). Contreras does not discuss Mary's availability to testify to these facts during the trial. Accordingly, he has failed to meet his burden under *Strickland*. *See Perez*, 310 S.W.3d at 894.

Third, Contreras argues that his attorney should have called an expert on the issue of "false memory and sexual abuse allegations" and an expert to testify that the panic attacks from which Doe suffered were not related to the sexual abuse. Part of an attorney's obligations to his client requires him "to investigate the facts of the case and

10

determine if an expert is necessary to present the defendant's case to the jury and, if so, to obtain competent expert assistance." *Ex parte Flores*, 387 S.W.3d at 636. But, again, the record is silent as to why counsel chose not to call expert witnesses on these subjects and whether any such witnesses were available. *See Menefield*, 363 S.W.3d at 593; *Perez*, 310 S.W.3d at 894. We conclude that Contreras has not shown that the failure to call expert witnesses was ineffective assistance of counsel.

Fourth, Contreras also argues that he would have asked for punishment to be assessed by the jury had he known that the judge could not probate his sentence. Contreras originally elected to have the jury assess punishment. However, after the jury returned its guilty verdicts, Contreras and the State agreed to proceed to a bench trial on punishment. At the punishment hearing, Contreras's attorney asked that the judge sentence him to probation. Although his attorney conceded that probation was not available as to one of the counts, he represented that the trial court could nonetheless impose probation on the other five counts. The trial court disavowed this, stating, "Probation doesn't apply in your case, sir, it's a 3G offense. . . . That's only from a jury." Based on when these offenses were alleged to have occurred, Contreras was eligible for probation only as to five of the offenses, and only if recommended by the jury. *See, e.g.*, Act of May 24, 2007, 80th Leg., R.S., ch 1205, § 3, 2007 Tex. Gen. Laws 4078, 4079 (not limiting a jury's ability to recommend probation for defendants convicted under §§ 21.11 and 22.021), *amended by* Act of May 12, 2009, 81st Leg. R.S., ch 87, § 6.005, 2009 Tex. Gen. Laws 208, 229 (recodified 2013) (limiting a jury's ability to recommend probation for defendants convicted under §§ 21.11 and 22.021); Act of May 29, 1995, 74th Leg., R.S.,

11

ch. 260, § 14, 1995 Tex. Gen. Laws 2207, 2476 (recodified 2013) (restricting a judge's authority to order probation if the defendant is convicted under §§ 21.11 and 22.021).

We will assume without deciding that counsel erroneously advised Contreras that the trial court could assess probation, and we analyze whether Contreras was prejudiced by this advice. "The likelihood of a better outcome from a waived or forfeited proceeding is not the correct prejudice standard because 'we cannot accord any "presumption of reliability" to judicial proceedings that never took place.'" *Miller v. State*, 548 S.W.3d 497, 500 (Tex. Crim. App. 2018) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). Rather, "a defendant meets the prejudice prong of his ineffective assistance of counsel claim by demonstrating that he would have opted for a jury if his attorney had correctly advised him that he was ineligible for probation from the trial court." *Id.* at 498.

*Swinney v. State* is instructive on this issue:

> After the jury convicted Appellant, his attorney argued that Appellant was eligible for and seeking probation from the court. When the judge questioned whether that was possible, the State pointed out that it was not, but the defense attorney maintained that it was and continued to urge the judge to assess a probated sentence.
>
> . . . .
>
> Appellant wanted probation, and he was eligible for it only from a jury, but his attorney argued for the trial court to assess it. Assuming for the sake of argument that the attorney advised Appellant that he was eligible for probation from the trial court, the record nevertheless says nothing about the impact of that bad advice on Appellant's punishment election. There is nothing to show that he relied on the advice, whether other considerations influenced his punishment election, or whether he would have elected the jury for punishment if his attorney had correctly advised him about his probation eligibility. . . .
>
> Since the record does not show a reasonable probability that the attorney's mistake about probation eligibility caused Appellant to waive the

12

jury for punishment, his [ineffective assistance of counsel] claim must fail for lack of prejudice.

663 S.W.3d at 89, 92.

The record before us is not adequately developed to show a reasonable probability that it was counsel's mistaken advice that caused Contreras to waive his right to a jury trial on punishment. *See id.* at 92. There is nothing in the record that illuminates to what extent the possibility of probation was a motivating factor in Contreras's decision to proceed to a bench trial on the issue of punishment. *See id.* In fact, the trial judge identified another reason Contreras may have decided to waive his right to a jury, stating, "I can tell you one thing, that jury wasn't going to give you probation." If the judge observed something in the jurors' body language or facial expressions of members during the trial that led it to reach this conclusion, Contreras may have reached a similar conclusion from his observations of the jury. Thus, the jury's overall demeanor and the possibility of a lighter sentence from the judge may have been the impetus behind Contreras's decision to waive this right, rather than his attorney's mistaken understanding of Contreras's probation eligibility. *See id.* (noting that "the record suggests a valid strategy for going to the court for punishment that may have been a separate influence for [a]ppellant's decision"). Accordingly, Contreras has not met the second prong of *Strickland* as to this claim. *See id.*

Finally, Contreras argues that trial counsel "should have requested an Article 38 'outcry hearing' to specifically challenge those witnesses who came to court to testify what [Doe said] happened to her back in 2020." But Contreras does not identify the specific outcry testimony to which he objects. *See* TEX. R. APP. P. 38.1 ("The brief must contain a

13

clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). In our review of the record, no witness ever testified as to the substance of Doe's outcry.

Doe's husband testified that in either 2020 or 2021, he overheard a conversation between Doe and her brother, and their conversation concerned "her stepdad." Doe's brother testified that Doe called him "screaming and crying," and their conversation lasted "about five minutes." Doe's brother "just couldn't believe" what his sister told him, so he called Contreras. Doe's brother asked Contreras, "What happened with you and my sister[?]" And after Doe's brother clarified he was referring to Doe, Contreras "hung up." A friend of Doe's testified that during college, she and Doe exchanged secrets while passing notes. After reading Doe's secret, her friend "felt angry, sad, [and] disgusted that something like that could happen to anybody let alone a child. [She] felt like [Doe's] innocence was robbed." Doe's mother also testified that she had a conversation with Doe in 2020 during which Doe "talked about the things that would happen." Doe's sister testified that around this same time she told Doe, "You need to let everybody know what . . . Contreras did to you." However, none of these witnesses testified as to what exactly Doe told them.

During the guilt phase of trial, article 38.072 applies only to hearsay statements made by the victim that describe the alleged offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(1). As none of the proffered testimony meets these requirements, counsel's failure to request an article 38.072 hearing does not constitute deficient performance. *See id.*; *cf. Compton v. State*, 666 S.W.3d 685, 731 (Tex. Crim. App. 2023)

14

("Counsel was not ineffective for failing to make a meritless objection."). Further, the record is silent as to why counsel did not request such a hearing. Accordingly, Contreras has not met his burden under the first prong of *Strickland. See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011).

Having concluded that Contreras failed to meet his burden under *Strickland* as to each of these claims, we overrule his second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of July, 2024.

15