In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00332-CR**
_____

**CHRISTOPHER GEORGE TUBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Tyler County, Texas**
**Trial Cause No. 13,545**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Christopher George Tubb for the offense of possession of a controlled substance—namely, methamphetamine—in an amount of 4 grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(d). Tubb initially pleaded "not guilty," but thereafter he announced he was going to plead "guilty" and elected for the jury to assess punishment, and the jury assessed punishment at seventeen years of imprisonment and a fine of $8,000. Tubb filed a motion for new trial alleging that he was denied the effective assistance

1

of counsel, and at the hearing he argued that his attorney did not listen to him or call witnesses on his behalf, that he did not plead "guilty" to the charge but only to the "well pled facts," and that the trial court failed to admonish him. The trial court denied the motion. In three issues, Tubb challenges his conviction arguing that (1) he did not freely, voluntarily, and knowingly enter a plea of guilty, (2) the trial court erred by denying his motion for new trial, and (3) he was denied the effective assistance of counsel. We affirm.

## Pretrial Proceedings

Tubb pleaded "not guilty" at his arraignment. Tubb subsequently filed with the court a letter he addressed to his appointed counsel, stating in relevant part:

> [] Do not argue nay [sic] facts on the public side of the above matter [o]n behalf of the undersigned. The well pled facts are all true therein and not disputed. To dispute the facts takes away my ability to dispute the substance of the presumptions in fact.
> . . .
> [] It is my intent to plead guilty to the facts [in] the charging instrument and do not controvert any of the well pled facts therein, which are true.

The letter indicated that he also sent copies to the "District Attorney" and "Judge Gibbs Walker[.]" Attached to the letter was a notarized document, signed by Tubb, titled "Affidavit of Specific Negative Averment[.]" The affidavit makes various allegations about the lack of evidence supporting the installation or implementation of "Trespassing Technology" and asserts that the "Respondent(s)" may be liable to

2

Tubbs for penalties ranging from $100,000 to $300,000 or imprisonment and that "Respondents" had twenty-one days to respond to the affidavit.[1]

In a pretrial hearing, Tubb's counsel told the court that Tubb had "filed something on his own behalf[.]" The court read from the document that Tubb had written instructing his attorney not to argue any facts, and when the court asked Tubb if he was pleading guilty to the offense charged, the following exchange occurred:

> [Tubb]: No that I'm pleading guilty. I'm going with all the facts are true if they're facts, if they're true, and it's not really a plead [sic] of guilty. It's just acknowledging the facts and saying yes, they are true.
>
> THE COURT: Okay. So -- so you're saying that -- that what the -- the indictment against you is true?
>
> [Tubb]: Yes, ma'am.
>
> THE COURT: That the facts that are alleged in the indictment are true?
>
> [Tubb]: Ma'am, that's what I'm saying with this letter and that I'm not arguing any of the facts.

Tubb's counsel told the court that Tubb had told him that he wanted to plead guilty and go to the jury for punishment. The prosecutor stated that Tubb had not signed anything and "he may change his mind."

Prior to voir dire, the trial court read the indictment and asked Tubb whether he pleaded guilty or not guilty. Tubb replied "Guilty." He also agreed that he had

---

[1] The affidavit does not define or identify "Trespassing Technology" or "Respondent(s)."

3

elected for the jury to decide punishment. The court received the plea and found him guilty of the second-degree felony. During voir dire, the prosecutor told the venire that the range of punishment was "anywhere from probation to 20 years[.]"

After the jury was selected but just before the evidence on punishment was submitted, outside the presence of the jury, Tubb told the trial court:

[Tubb]: I don't feel that I'm getting a very fair hearing here.

THE COURT: Here where?

[Tubb]: Here. [Defense counsel] has not done anything I've asked him to.

THE COURT: Okay.

[Tubb]: I don't even have character witnesses here.

THE COURT: Okay.

[Tubb]: I've barely had a chance to get to talk to him when I did talk to him. Yesterday we went over the letter that I filed.

THE COURT: Right.

[Tubb]: Said that I was going to plead guilty to the facts, not to the charge, but to the facts.

THE COURT: Okay. Well, okay. All right. Well, sounds like you did plead guilty -- you did plead guilty yesterday in chambers.

[Tubb]: Unknowingly to the charge. But in my letter[,] I clearly stated I agreed to the facts. We went over that.

THE COURT: Yes, we did go over that. Mr. Tubb, I accepted your plea yesterday; and we're here today to move forward with the punishment phase. That's exactly what we're going to do. Okay. That's what we're

4

about to do. Okay. And as far as you having a fair hearing, I'm going to give you as fair of a jury trial as you can get. That's what I'm going to do.

[Tubb]: Okay. I'm having a problem here because I haven't had a chance to speak with this man. We couldn't get anything together. He didn't want to talk to me yesterday.

THE COURT: Okay. I don't know; but I'm going to allow [defense counsel] to put on the record his efforts, as far as getting ready for trial. So, if you want to go ahead and do that, [defense counsel], you can do that or you don't have to.

[Defense counsel]: Rather not, Judge.
. . .
[Prosecuting attorney]: This document that was filed, I guess, July 5th that we reviewed in chambers yesterday on the record appears to severely limit what Mr. Tub[b] wants his attorney to do for him. . . .

THE COURT: Is that true, Mr. Tubb, what he's saying, that you wanted to limit what your lawyer could do?

[Tubb]: I gave him specific directions as of what to do, yes, ma'am. It's all right here.
. . .
[Prosecuting attorney]: . . . it says Item No. 4, "It is my intent to plead guilty to the facts, the charging instrument, and do not controvert any of the well-pled facts therein which are true." The charging instrument, if he's pleading to the facts in the charging instrument, he's pled guilty to the offense.

THE COURT: Okay. And we're going to move forward with the punishment phase of this trial today. . . .

Trial on Punishment

<u>Testimony of Officer Steven Hoke</u>

Steven Hoke, an officer in the Woodville Police Department, testified that he knew Tubb from prior law enforcement encounters and Tubb was his neighbor. Officer Hoke agreed that he was on duty on November 21, 2018, and he had learned that Tubb had voluntarily gone into the sheriff's office, Hoke requested dispatch to check whether Tubb's license status was valid, and dispatch advised him Tubb's license was not valid. Hoke waited in a parking lot across from the sheriff's office for Tubb to come out, and he watched Tubb leave the building, get into a vehicle, and drive away. According to Hoke, he could see Tubb's vehicle plainly and clearly, and he could read the license plate. Using the computer in his patrol vehicle, Hoke ran the license plate, and the system indicated that the registration was expired. Hoke agreed that, at that point, he knew that Tubb was driving with an invalid license and an expired registration. Hoke caught up with Tubb's vehicle and initiated a traffic stop.

Hoke explained to Tubb that he pulled Tubb over because of an expired registration and Hoke asked Tubb to roll his window down. Tubb only rolled the window down about six or eight inches. Hoke asked for Tubb's license and insurance, and Tubb replied that he did not have them and that his license was

6

probably suspended. Hoke asked Tubb to get out of his vehicle, Tubb said he would not, and when Hoke grabbed the door handle, Tubb tried to jerk it back.

Officer Hoke identified State's Exhibit 1 as a video made from his body camera that day. The video was published to the jury. The body cam video of the traffic stop shows Officer Hoke performing a search of Tubb's vehicle, and Hoke agreed that he found a baggie containing a crystalline substance inside a cigarette box during the search. Hoke also identified a bag he retrieved from Tubb that Hoke believed contained crystal meth. Hoke field tested the substance, which weighed fifteen grams, and it tested positive for methamphetamine. Hoke testified that he put the substance in an evidence bag and transferred it to his captain. On cross-examination, Hoke testified that it was common knowledge in the law enforcement community that Tubb drove without a license, but he stated that he pulled Tubb over for the expired registration.

Other Witnesses for the State

Sebastian Frommhold, a chemist with the DPS crime lab in Houston, testified that his analysis of the substance submitted in this case reflected that it contained methamphetamine and the total weight was 13.69 grams. Frommhold's report of his analysis was admitted as State's Exhibit 8. Tyler County Sheriff's Office Deputies Simon Dean Prince and Garret Nalley testified about other traffic stops of Tubb in which the officers had determined that Tubb did not have a valid driver's license.

7

<u>Tubb's Testimony</u>

Tubb testified that he had been driving without a license due to toll violations that he had not paid. Tubb testified that, when he was pulled over, the officer asked if he could search his vehicle, Tubb declined, and when Tubb stepped out of the vehicle, the officer grabbed his pockets looking for weapons. Tubb recalled that he was pulled over three times within two weeks. According to Tubb, he needs a license to drive, but not to travel.

Tubb testified that when he drove away from the sheriff's office, an officer stopped him and Tubb told the officer "I don't understand what I did wrong. I was traveling. I wasn't driving; and I was traveling in my automobile, not my motor vehicle." Tubb told the jury that he believed there was no probable cause for the stop, and he did not believe the officer ever had a clear view of his license plate.

Tubb agreed that he had entered a plea of guilty and agreed to have the jury assess punishment, but he testified that he "was under the impression that [he] was pleading guilty to the facts and that the facts were going to be presented." Tubb also agreed that the jury could assess punishment from probation to twenty years of imprisonment and he was asking the jury to give him probation because he had no criminal history "other than these traffic stops[.]" Tubb denied that he had methamphetamine, and he told the jury he did not know where the methamphetamine found in his vehicle came from. When the prosecuting attorney

8

asked about him pleading guilty to having methamphetamine, Tubb replied "I plead guilty to the facts; and we haven't established that as a fact, have we?" Tubb also testified that, when he wrote the letter to his attorney instructing him that the "well pled facts are all true[,]" he had not seen the indictment. Tubb denied pleading guilty to possession of methamphetamine.

Motion for New Trial

After the jury assessed punishment at seventeen years, Tubb filed a motion for new trial. In his motion he alleged that he had pleaded guilty but sought a new trial because he had not received the effective assistance of counsel in the following respects: (1) trial counsel failed to file a motion for community supervision; (2) trial counsel failed to file a pre-trial motion to suppress evidence based on lack of probable cause or consent to search his vehicle; (3) trial counsel failed to confer with him prior to trial, to adequately prepare for trial, or to conduct an independent investigation of the case; (4) trial counsel failed to interview and call defense or character witnesses; and (5) trial counsel failed to file a motion for continuance. In a letter filed with the trial court later, Tubb's new counsel also complained that Tubb was not admonished as required by article 26.13 of the Code of Criminal Procedure.

In a hearing on the motion for new trial, Tubb's new attorney explained to the court that when Tubb pleaded guilty he did not do so knowingly, freely, and voluntarily, and that Tubb had meant to plead guilty to the facts but he did not want

9

to plead guilty to the charge. His attorney also argued that Tubb did not know the range of punishment for the offense charged because he was not properly admonished, that his plea was not knowingly and voluntarily given, and that the trial court failed to admonish Tubb before the plea, which provided grounds to grant a new trial. The prosecuting attorney told the court that Tubb entered his plea knowingly, freely, and voluntarily, and that with respect to the alleged violation of article 26.13, the trial court should determine whether the article 26.13 violation was harmless in light of the entire record and that the record would show that Tubb knew the range of punishment prior to pleading guilty.

<u>Testimony by J.W.</u>

Tubb's trial counsel, J.W., testified at the motion for new trial hearing. J.W. was appointed to be Tubb's counsel on June 20, 2019, and the following day, he learned that trial was set for July 8, 2019. He testified that on that same day, he reviewed the case file, including the videos, lab report, and the State's witness list. According to J.W., Tubb never asked J.W. to show him the State's evidence. According to J.W., he tried to discuss the case with Tubb by phone, but Tubb "didn't want to talk about anything" in the phone call, and J.W. discussed the case in person with Tubb the morning of trial. J.W. was not made aware of the availability of character witnesses until the morning of trial, and Tubb had not mentioned character witnesses until that morning. Although one person was present at trial, when J.W.

10

talked with her before trial, he determined "there was nothing that she could say[,]" and Tubb told him the individual was not a witness to the incident that resulted in Tubb's arrest.

J.W. testified that he did not learn of the letter Tubb had filed with the court until the morning of trial, and he discussed the letter with Tubb that morning. J.W. advised Tubb that he did not want the jury to see the letter, and because Tubb had already filed the letter "there's not much [he] could have done[]" to protect Tubb. J.W. recalled that Tubb had told the court prior to trial that he was pleading to the facts, and the trial court read from the reporter's record of that conference that Tubb had agreed that the facts alleged in the indictment were true. J.W. agreed he regarded Tubb's letter as Tubb's instructions to him. J.W. also testified that, after pleading before the trial court, Tubb did not sign the set of plea papers that had been drawn up, Tubb refused to sign any type of judicial confession or anything to justify a plea of guilty, and those papers were discarded.

According to J.W., he talked with Tubb prior to trial and did an independent investigation prior to trial, but he did not do an investigation on the charge of possession of a controlled substance because it was "pretty straightforward." J.W. also agreed that he talked with Tubb prior to trial and prepared him to testify and that he spent more than twelve hours preparing for trial. J.W. agreed that he felt

11

"hamstrung" by the letter that Tubb had filed with the court because it limited what he could do.

J.W. agreed that, on the day of the arraignment and prior to entering a plea, he advised Tubb that he was facing a range of punishment from two to twenty years, and that he would ask for probation. J.W. testified that Tubb understood he could get two to twenty years' imprisonment and that they were going to the jury on punishment because they could possibly give him probation. Although J.W. did not file an application for community supervision, he made an oral motion, which the court granted, and the jury charge included the possibility of community supervision.

J.W. testified that he did not contemplate filing a motion for continuance. In his affidavit, he stated that Tubb never asked for a continuance. J.W. testified that he did not file a motion to suppress because he did not find any viable grounds for one. An affidavit by J.W. was entered into evidence as State's Exhibit 4.

Tubb's Testimony at the New Trial Hearing

Tubb testified that he met his original defense counsel at the arraignment, they discussed trial strategy, but they did not discuss the evidence or his testimony. According to Tubb, his attorney told him that if he did not think he needed a driver's license to drive, then there was nothing to talk about. Tubb further testified that his attorney told him he did not understand the letter Tubb had filed with the court. Tubb testified that, in his mind, he was not pleading guilty to possession, but he was

12

pleading guilty "to the facts whatever they may be before anything had been presented or proved[,]" that when he pleaded guilty, "nothing had been brought forth yet and nothing had been proven as fact yet[,]" and that "I was pleading guilty to the facts and [] no facts had been established." Tubb agreed that his plea was not knowing or voluntary.

According to Tubb, he did not see any of the State's evidence prior to the hearing in which he entered his guilty plea, and he would not have pleaded guilty if he had known that the facts alleged in the indictment would not have to be proved at trial. Tubb testified that his attorney did not talk with him about witnesses or what could be expected at trial. Tubb agreed that his attorney told him he was facing two to twenty years as a consequence of pleading guilty and "that we were going to go for probation[.]" Tubb agreed that his attorney got him the right for the jury to consider probation.

Tubb recalled that, on the day of his punishment trial, he told his attorney he had character witnesses, and his attorney replied, "It's too late for that." Tubb testified that three character witnesses were present for the trial on punishment, including one inside the courtroom, but his attorney did not want to talk with that witness and his attorney did not call any character witnesses. Tubb agreed that he signed the State's Certificate of Discovery and Defendant's Acknowledgement of

Receipt of Discovery after the trial, but he denied that he saw any of the documents listed.

Tubb agreed that the July 3, 2019 letter he filed with the court contained Tubb's directions to his attorney. He testified that he thought the letter communicated that "nothing had been proven yet. There were no facts and that the facts may not be what is presumed." When asked what pretrial motion to suppress his attorney should have filed, Tubb replied that he was not sure.

Testimony of H.P.

H.P. testified that she was present for most of Tubb's trial on punishment. According to H.P., she had called Tubb's attorney numerous times about the letter Tubb wrote to his attorney and filed with the clerk. She testified that she was prepared to testify on behalf of Tubb, but his attorney did not call her. H.P. testified that she would have testified that Tubb had always been honest.

## Issues

Appellant's first issue argues that his plea was not knowing, voluntary, and intelligent, that he did not have a full understanding of his plea and its consequences, and that the trial court erred by failing to give admonishments required by article

26.13 of the Code of Criminal Procedure. Appellant also argues the court's error in accepting his plea is "constitutional error that rises above harmless review."[2]

Appellant's second issue argues that the trial court erred in denying his motion for new trial because he presented evidence in support of his legal claim and his substantial rights were prejudiced. Appellant's third issue argues he was denied the effective assistance of counsel.

Knowing and Voluntary Plea

The Texas Code of Criminal Procedure requires that "[n]o plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." Tex. Code Crim. Proc. Ann. art. 26.13(b). The rules require that the trial court shall make certain admonishments prior to accepting a guilty plea, including among other items an admonishment about "the range of the punishment attached to the offense[.]" *Id.* art. 26.13(a)(1); *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). In admonishing the defendant, "substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." Tex. Code Crim. Proc. Ann. art. 26.13(c). The trial court may make the admonishments orally

---

[2] Appellant did not argue at trial and does not argue on appeal that the letter to his trial attorney that he filed with the district clerk and on which he copied the district attorney and the court was a privileged attorney-client communication.

15

or in writing. *Id.* art. 26.13(d). A failure to admonish under article 26.13 is subject to review for harmless error. *See Davison*, 405 S.W.3d at 687-88; *see also Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003) (concluding that article 26.13(a) admonishments have not been held to be constitutionally mandated) (citing *McCarthy v. United States*, 394 U.S. 459, 465 (1969)); *High v. State*, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998). Harm in this context means that the defendant probably would not have pleaded guilty but for the failure to admonish. *See Burnett v. State*, 88 S.W.3d 633, 638 n.14 (Tex. Crim. App. 2002).

Evidence that a defendant's guilty plea was part of a strategy to persuade the jury to grant probation may imply that the defendant's guilty plea was voluntary and knowing under article 26.13. *See Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005). Where the attorneys, with the defendant present, explain the applicable range of punishment to the venire during voir dire, a defendant is deemed to have notice of the range of punishment and a trial court's failure to admonish on the punishment range is harmless error that does not affect the defendant's substantial rights. *See Valdez v. State*, 326 S.W.3d 348, 351-52 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.); *Moore v. State*, 278 S.W.3d 444, 447-48 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Stevens v. State*, 278 S.W.3d 826, 827-28 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

In this case, during voir dire and while Tubb was present, the prosecutor told the venire the applicable range of punishment. In a pretrial hearing, Tubb's attorney asked for the record to reflect that, if he were found guilty, that the jury could give probation, and the trial court responded, "Okay." In the same hearing, Tubb's attorney stated, "if you're found guilty, [] we'll be asking the jury to assess you probation as punishment; correct?" to which Tubb replied, "[t]hat's correct." During the trial on punishment, Tubb agreed that the jury could assess punishment from probation to twenty years of imprisonment and that he was asking the jury to give him probation. At the motion for new trial, Tubb testified that his attorney told him he was facing two to twenty years because of pleading guilty and that they would ask the jury for community supervision. Tubb's trial counsel testified that on the day of the arraignment and prior to entering a plea, he advised Tubb that the charge was a second-degree felony, that he was facing a range of punishment from two to twenty years and a fine of up to $10,000, and that he would ask for community supervision. We conclude that the record reflects that Tubb was aware of the range of possible punishment for the crime charged, including the possibility of community supervision, and that the trial court's failure to admonish him, while erroneous, was harmless. *See Davison*, 405 S.W.3d at 688; *Gardner*, 164 S.W.3d at 399; *Valdez*, 326 S.W.3d at 351; *see also* Tex. R. App. P. 44.2(b); *Burnett*, 88 S.W.3d at 635, 640 (holding that where the record was "replete with statements concerning the

17

applicable range of punishment[,]" trial court's failure to admonish on the issue, while clearly erroneous, was harmless). Appellant has also failed to show that, but for the failure to admonish, he probably would not have pleaded guilty. *See Burnett*, 88 S.W.3d at 638 n.14.

Appellant also states that his plea was not knowing and voluntary and the court's error in accepting his plea is "constitutional error that rises above harmless review." Appellant has failed to brief the nature of the alleged constitutional error or cite to appropriate legal authorities in support of this contention. *See* Tex. R. App. P. 38.1(i). When an appellate issue is unsupported by argument, fails to apply the law to the facts, or lacks citation to the record or legal authority, nothing is preserved for review. *See Wolfe v. State*, 509 S.W.3d 325, 342-43 (Tex. Crim. App. 2017); *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000). Appellant has focused his arguments on appeal to address only article 26.13, and to the extent he intended his brief to assert a constitutional due process challenge to his guilty plea, we decline to address the issue because it is inadequately briefed. *See Wolfe*, 509 S.W.3d at 345; *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (appellate court has no obligation to consider inadequately briefed points of error) (citing *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000)). We overrule Appellant's first issue.

### Denial of Motion for New Trial and
### Alleged Ineffective Assistance of Counsel

Appellant's second issue argues that the trial court erred in denying his motion for new trial because he presented evidence in support of his legal claim and his substantial rights were prejudiced. Appellant's third issue argues he was denied the effective assistance of counsel. We address Appellant's second and third issues together because Appellant's motion for new trial was based on his claim that he was denied the effective assistance of counsel.

We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Where the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's resolution of the ineffective-assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *See Smith v. State*, 286 S.W.3d 333, 339-40 (Tex. Crim. App. 2009). In a motion for new trial, the trial court possesses broad discretion to determine the credibility of the witnesses and the weight of the evidence. *See Shanklin v. State*, 190 S.W.3d 154, 166 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *State v. Pilkinton*, 7 S.W.3d 291, 292 (Tex. App.—Beaumont 1999, pet. ref'd).

A defendant has a Sixth Amendment right to the effective assistance of counsel at trial. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668,

684-85 (1984). To establish that he received ineffective assistance of counsel, an appellant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 687). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689). An appellant's failure to make either of the required showings of deficient performance or prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

The right to effective assistance of counsel ensures the right to "reasonably effective assistance[,]" and it does not require that counsel must be perfect or that the representation must be errorless. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). The appropriate context is the totality of the representation, and ordinarily counsel should not be judged on isolated portions of the representation.

20

*See Thompson*, 9 S.W.3d at 813; *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

In Appellant's motion for new trial and his appellate brief, he argues that trial counsel failed to file a sworn motion for community supervision. Appellant cites to *Ex parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998), but we find that case distinguishable on the facts because in *Welch*, trial counsel had mistakenly understood the defendant had a prior felony conviction that would preclude community supervision. *See* 981 S.W.2d at 184-86. Appellant does not allege, nor does the record support, any confusion or mistake about whether Tubb had a prior felony conviction or whether he was eligible for community supervision.

In the hearing on the motion for new trial, trial counsel testified that he knew Tubb was eligible for community supervision, and although he did not file a written application, he made an oral motion that community supervision be considered and the court granted the motion. The jury charge provided that the jury could recommend that Tubb be placed on community supervision. Because the full range of punishment, including community supervision, was before the jury, the failure of the attorney to submit a written motion for community supervision is moot and Appellant has failed to show there is a reasonable probability that, but for any alleged error by trial counsel in failing to file a written application, the result of the

21

proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Garcia*, 57 S.W.3d at 440.

In Appellant's motion for new trial, he also argued that the methamphetamine found in Tubb's vehicle "was found pursuant to a fabricated reason for a stop and a subsequent illegal search." According to Appellant, law enforcement officers "began harassing" Tubb after he filed a criminal trespass claim against a deputy, and the officer who initiated the traffic stop "could not read the [license] plate from his position relative to Defendant's vehicle[.]"

Appellant's brief does not provide any legal support for his contention that there was no probable cause for the traffic stop. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to clearly state arguments and cite to appropriate legal authorities and to the record). Nevertheless, we find no harm under the second prong of *Strickland*.

Tubb testified at the trial on punishment that he had been driving without a license for about three and a half years and his license was suspended because he had not paid toll violations. He also testified that he did not need a license to travel because his vehicle is an extension of his household and he was not doing commerce on the roadways. Tubb believed the local police were harassing him and he did not believe Officer Hoke could see his license plate that night.

22

Officer Hoke testified that dispatch told him that Tubb's license was not valid. Hoke also testified that he could read the license plate on Tubb's vehicle, and when he ran the plates, the system indicated that the registration was expired. According to Hoke, Tubb did not have insurance and registration for the vehicle, and Tubb told the officer that his license was probably suspended.

It is a traffic violation in Texas to operate a motor vehicle that has not been registered as required by law. *See* Tex. Transp. Code Ann. § 502.472. A driver must also possess a valid driver's license and display it upon request by a law enforcement officer. *See* Tex. Transp. Code Ann. § 521.025. Generally, an officer may use information obtained from checking a vehicle's license plate in a computer database to form reasonable suspicion for a traffic stop. *See Delk v. State*, 855 S.W.2d 700, 709-10, 712 (Tex. Crim. App. 1993). An officer may lawfully stop and detain a person for a traffic violation committed in an officer's presence, and an "objectively valid traffic stop is not unlawful [] just because the detaining officer had some ulterior motive for making it." *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995); *see also Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also* Tex. Code Crim. Proc. Ann. art. 14.01(b) ("A peace officer may

23

arrest an offender without a warrant for any offense committed in his presence or within his view."); Tex. Transp. Code Ann. § 543.001 (an officer may arrest without a warrant a person violating the Transportation Code). When an officer has probable cause to arrest, a search incident to arrest is valid if it is conducted immediately before or after arrest. *See State v. Sanchez*, 538 S.W.3d 545, 550 (Tex. Crim. App. 2017) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999)); *see also Thornton v. United States*, 541 U.S. 615, 623 (2004) (in a search incident to arrest, an officer may search the passenger compartment of a vehicle "to ensure their safety and to preserve evidence").

It is undisputed that Tubb did not have a valid registration and that he was driving with a suspended license. Therefore, Officer Hoke had a reasonable suspicion for the traffic stop and probable cause for a warrantless arrest and could conduct a search incident to the arrest. *See Thornton*, 541 U.S. at 623; *Atwater*, 532 U.S. at 354; *Sanchez*, 538 S.W.3d at 550; *Walter*, 28 S.W.3d at 542. Appellant has not demonstrated that, but for his trial counsel's failure to file a motion to suppress, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Garcia*, 57 S.W.3d at 440.

In Appellant's motion for new trial, he also argued that trial counsel failed to meet with Tubb and prepare for trial and failed to conduct an independent

24

investigation. Trial counsel has a duty to become acquainted with the facts of the case and conduct a reasonable investigation. *See Strickland*, 466 U.S. at 691; *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983). "*Strickland* does not require defense counsel to investigate each and every potential lead," and a decision not to present mitigating evidence should be based on a "thorough understanding of the available evidence." *Ex parte Woods*, 176 S.W.3d 224, 226 (Tex. Crim. App. 2005). A claim of ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007).

In this case, Tubb's trial counsel testified that he did an independent investigation prior to trial, but the possession charge was "pretty straightforward." Trial counsel stated in his affidavit and testified at the motion for new trial that he talked with Tubb multiple times prior to trial and he spent more than twelve hours preparing for trial. In his affidavit, trial counsel stated that Tubb "only wanted to talk about how the local law enforcement was harassing him[,]" and he testified that he advised Tubb prior to trial that talking about "the so-called harassment" would not look good to the jury. According to trial counsel, Tubb never requested to see any discovery. The trial attorney testified that Tubb "was well aware of the alleged facts[]" and admitted they were true. Trial counsel stated that he felt "hamstrung"

25

by the letter that Tubb had filed with the court because it limited what trial counsel could do.

Appellant has not demonstrated what further investigation or conference with Tubb would have revealed that reasonably could have changed the result of the case or that, but for trial counsel's alleged failure to confer and investigate, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Cooks*, 240 S.W.3d at 912; *Garcia*, 57 S.W.3d at 440.

Appellant also argued that trial counsel was deficient because he failed to interview and call defense witnesses. To show ineffective assistance of counsel based on an uncalled witness, an appellant must show that the witness would have been available to testify, and that the witness's testimony would have been of some benefit to the defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007).

H.P. testified at the hearing on the motion for new trial that she was present at the trial on punishment, and she would have testified that Tubb was honest. Tubb testified that three character witnesses were present at the trial on punishment, but he did not identify these witnesses or their expected testimony in his testimony, his motion for new trial, or in his brief. Trial counsel testified that Tubb told him the person who was present at trial was not a witness to the incident that resulted in Tubb's arrest, and after trial counsel talked with her, he concluded "there was

nothing she could say[.]" On this record, we conclude that Appellant has not demonstrated that the testimony of any uncalled witnesses would have been of some benefit to the defense or, but for trial counsel's failure to interview or call witnesses, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Ramirez*, 280 S.W.3d at 853; *Garcia*, 57 S.W.3d at 440.

Appellant also argues on appeal that he did not receive the effective assistance of counsel because his trial counsel failed to file a motion for continuance. According to Appellant, during the punishment trial, he requested a continuance "when he realized that what he thought he was pleading guilty to was not, in fact, what he did indeed plead guilty to." Appellant argues that he needed time to confer with his counsel to understand the meaning of his oral and written statements.

We first note that Appellant did not argue in his motion for new trial that he needed more time for his defense counsel to help him understand the importance and meaning of his written and oral statements and his plea of guilty. Therefore, no testimony was developed at the hearing on the motion for new trial on this issue. Without presenting the issue in the motion for new trial, the record on direct appeal is generally inadequate to develop an ineffective assistance claim. *See Thompson*, 9 S.W.3d at 813-14. Appellant's brief asserts that "on several occasions" he requested a continuance to confer with his counsel, but Appellant provides no citations to the record where he made such requests. *See* Tex. R. App. P. 38.1(i) (an appellate brief

must provide citations to legal authority and to the record). That said, Appellant has also failed to make the required showing that, but for his counsel's alleged failure to file a motion for continuance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Garcia*, 57 S.W.3d at 440.

We conclude that Appellant has not demonstrated that counsel's performance fell below an objective standard of reasonableness and he failed to show there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Garcia*, 57 S.W.3d at 440. The trial court's denial of the motion for new trial was within the zone of reasonable disagreement. *See Smith*, 286 S.W.3d at 339-40. We overrule Appellant's second and third issues.

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 5, 2021
Opinion Delivered April 28, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Johnson, JJ.

28