**Opinion filed January 24, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00173-CR
_____

**SHARRION MURPHY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-20-0371-CR**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court found Appellant, Sharrion Murphy, guilty of theft of property valued at less than $2,500 with two or more previous convictions, a state jail felony, and sentenced her to two years' confinement in a state jail facility. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West Supp. 2024). In a single issue

with multiple subparts, Appellant asserts that she received ineffective assistance of counsel.  We affirm.

*Factual and Procedural History*

On November 2, 2019, Appellant was caught on security cameras stealing merchandise from a Dillard's department store in Odessa.  Appellant was indicted four months later and then absconded for nearly two years.  On July 19, 2022, Appellant waived her right to a jury trial, and the case was reset for a guilty plea.  In the eleven months that followed, the trial court granted twelve separate requests by Appellant for continuances before setting the case for a bench trial.  The case proceeded to a bench trial on July 26, 2023.

At trial, Appellant stipulated to the two prior theft convictions alleged in the indictment, and the State called two witnesses, Leticia Bejarano and Andrea Idith Carr, whose testimony was not controverted.  Bejarano, a Dillard's employee, testified that she witnessed a female, later identified as Appellant, concealing merchandise in the men's Polo section of the store on November 2, 2019.  Security personnel confronted Appellant outside of the store.  Prior to Carr testifying, the trial court advised the parties that Carr is his "best friend's wife" and assured them that it would "not effect [sic] [his] opinion on the case."  Neither party objected nor requested to examine the witness on voir dire to explore her relationship with the court.  According to Carr, an assistant manager at Dillard's, $1,576 worth of merchandise was recovered.  Appellant's trial counsel did not cross-examine either witness and no other witnesses testified.

Security video footage and an itemized receipt of the stolen merchandise were admitted into evidence.  In the footage, Appellant can be seen removing merchandise from the shelves and placing items into a large shopping bag.  She can later be seen walking past the cash registers as she exits the store before being escorted back into

the store by security. Following brief closing arguments by both parties, the trial court found Appellant guilty.

During punishment proceedings, Appellant's trial counsel called her to testify. Appellant testified that in September 2022, while her case was pending, she had been in a "life changing" motor vehicle accident resulting in injuries that required surgery. Appellant testified that although she had done "a lot of time" and had "never been scared to do time," she was fearful now. Appellant's trial counsel also questioned her about the instant case:

> [TRIAL COUNSEL]: What caused that change in regards to your life of larceny?
>
> [APPELLANT]: The big change has came [sic] because I had to search myself and find out why things were happening that way. I haven't been doing anything that I am not supposed to do. I am just trying to get myself back together because I got out of prison -- I have been out of prison for 13 years straight without any offenses, until the end. And that was during the time I was going through some serious things.
>
> [TRIAL COUNSEL]: Back in November of 2019?
>
> [APPELLANT]: Yes. And I fell back into old behavior.

She asked the trial court for forgiveness and leniency stating: "And I just say just forgive me. I can't do it no more. I can't."

The trial court sentenced Appellant to two years' confinement and assessed a $1,600 fine. This appeal ensued.

*Ineffective Assistance of Counsel*

In one issue with multiple subparts, Appellant avers that she received ineffective assistance of counsel at trial. At the outset, we observe that the record does not indicate that Appellant filed a motion for new trial alleging ineffective

assistance of counsel. Accordingly, trial counsel did not testify as to his trial strategy and decisions.

A. *Standard of Review and Applicable Law*

Texas courts follow the *Strickland* two-prong test to determine whether trial counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *See Andrus v. Texas*, 590 U.S. 806, 813 (2020) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *State v. Hradek*, No. PD-0083-23, 2024 WL 5059142, at *6 (Tex. Crim. App. Dec. 11, 2024); *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). First, an appellant must show that his counsel's performance was deficient; second, the appellant must show that the deficient performance prejudiced the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland,* 466 U.S. at 687. Judicial review of an ineffective-assistance-of-counsel claim is highly deferential to trial counsel and avoids using hindsight to evaluate counsel's actions. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

For the performance element, we must determine whether Appellant has shown by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. When the record contains no direct evidence of counsel's reasons for the challenged conduct, we "will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We "will not conclude [that] the challenged conduct constituted deficient performance unless the conduct was so

outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We review the totality of the evidence when evaluating an appellant's ineffective-assistance-of-counsel claim. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (citing *Strickland*, 466 U.S. at 695). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness of counsel. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Often, the record on direct appeal will not be sufficient to show that trial counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

"[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (providing that a claim for ineffectiveness of counsel "must be firmly founded in the record[,] and the record must affirmatively demonstrate the alleged ineffectiveness"). A defendant must overcome the presumption that, under the circumstances, the challenged action could be considered "sound trial strategy." *Rylander*, 101 S.W.3d at 110 (quoting *Strickland,* 466 U.S. at 689). Failure to make the required showings of deficient performance and sufficient prejudice will defeat claims of ineffective assistance. *Id.*

For the prejudice element, we determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694; *Hradek*, 2024 WL 5059142, at *6. The

reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). "[T]he analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012)). "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Id.* at 599 (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)); *see also Echols v. State*, No. 11-23-00110-CR, 2024 WL 4375220, at *3 (Tex. App.—Eastland Oct. 3, 2024, no pet.) (mem. op., not designated for publication) (observing the same). A defendant's inability to make a showing under either prong defeats a claim for ineffective assistance. *Johnson*, 624 S.W.3d at 587; *Renfroe v. State*, 529 S.W.3d 229, 235 (Tex. App.—Eastland 2017, pet. ref'd).

B. *Analysis*

We address each of Appellant's allegations of ineffectiveness in turn.

### 1. *Jury Trial Waiver*

Appellant first challenges trial counsel's decision to proceed with a bench trial rather than request a withdrawal of Appellant's written waiver of a jury trial.

A trial court's decision to grant or deny a request to withdraw a valid jury-trial waiver[1] is discretionary, and the onus would have been on Appellant to show that granting her request would not: "(1) interfere with the orderly administration of the business of the trial court; (2) result in unnecessary delay or inconvenience to witnesses; or (3) prejudice the State." *Sanchez*, 630 S.W.3d at 95 (citing *Hobbs v. State*, 298 S.W.3d 193, 197–98 (Tex. Crim. App. 2009)).

---

[1]Appellant does not contest the validity of her waiver, nor does she suggest that her waiver was not expressly, knowingly, or intelligently made. *See Sanchez v. State*, 630 S.W.3d 88, 94 (Tex. Crim. App. 2021) (requiring that a waiver of jury trial be made expressly, knowingly, and intelligently).

6

Here, Appellant appeared at her scheduled plea hearing and expressed a reluctance to plead guilty, citing her need for an additional surgery that had yet to be scheduled. The trial court informed Appellant that while she was not required to plead guilty, she had waived her right to a jury trial and would either need to petition the court to rescind her waiver or be placed on the court's bench trial docket. The trial court cautioned Appellant that because this case had been pending on the court's docket for several years and the trial court had already granted Appellant's twelve requests for resetting, it was unlikely that it would grant such a request.

While Appellant may have been unprepared to plead guilty that day, we cannot ascertain from the record or conclude that she desired to proceed with a jury trial instead of a bench trial. Trial counsel's reasoning behind proceeding with a bench trial rather than requesting the withdrawal of Appellant's jury trial waiver is not apparent from the record. But considering the video recording of the theft, the overwhelming evidence of her guilt, and her past similar offenses, we must entertain the possibility that counsel's trial strategy was—rather than to depend on a jury to believe her denial of guilt—to appeal to the trial court for leniency in punishment. These facts and an apparent and seemingly logical trial strategy consistent therewith preclude a finding that counsel's conduct was objectively deficient. *See Johnson*, 624 S.W.3d at 587; *see also Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App. 2022), cert. denied, 144 S. Ct. 1166 (2024) ("[A]n appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005))).

2. *Opening Statement & Closing Argument*

Appellant next argues that trial counsel was ineffective when he failed to make an opening statement and provided a "short, rambling defense."

Choosing whether to make an opening statement and choosing what a closing argument will entail are inherently tactical decisions. *See Ex parte Scott*, 541 S.W.3d 104, 119 (Tex. Crim. App. 2017) ("Closing arguments involve inherently tactical decisions that must be tailored to the strategy of the defense based on events that transpired during trial."); *see also Perkins v. State*, No. 11-05-00088-CR, 2007 WL 178234, at *2 (Tex. App.—Eastland Jan. 25, 2007, no pet.) (not designated for publication) ("Because an opening statement provides the State a preview of the defense's strategy, defense counsel may make a tactical decision not to make an opening statement.").

Following an opening statement by the State, which itself was very brief,[2] Appellant's trial counsel stated: "Your Honor, we await the burden of proof on the State to see if they meet the elements of the indictment." At the conclusion of the guilt phase of trial, with testimony spanning only twenty pages of the record, both the State and Appellant delivered short closing remarks. Appellant specifically argued that the State had failed to meet an element of the offense, namely, the identity of the owner of the stolen property.

At the end of the punishment phase of trial and during his closing argument, Appellant's trial counsel asked the trial court for leniency and to take into consideration (1) the testimony of Appellant "in regards to her plea of attrition asking for forgiveness, and the fact that she has turned a corner in her life"—the proof that she had changed since the theft at Dillard's in 2019—and (2) the fact that "there has been no [criminal] involvement, no missing court, no bond violations no nothing

---

[2]The State's opening statement reads in its entirety as follows:

Your Honor, you will see evidence today showing the Defendant going into Dillard's Department Store. Walk into the men's Polo section and taking various clothing items. It was all on camera. And she left the store after walking past multiple registers and left Dillard's Department Store. And you will see evidence showing that the value of the items was -- owed more than zero dollars and less than $2,500.00.

involving crossing the line, and has been behaving since that time period.  That is over four years worth or close to it."  Trial counsel's decision as to an opening statement did not fall below an objective standard of reasonableness in this instance, and albeit brief, we may not second guess trial counsel's strategy decision to argue what he did at trial.  *See Hughitt v. State*, 539 S.W.3d 531, 543–44 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Whether to deliver an opening statement is entirely optional."); *see also Taylor v. State*, No. 11-22-00344-CR, 2024 WL 2965190, at *3 (Tex. App.—Eastland June 13, 2024, pet. ref'd) (mem. op., not designed for publication) ("[T]he length of a closing argument do[es] not necessarily indicate that trial counsel's assistance was ineffective.").  Under the circumstances, Appellant has not shown that trial counsel was deficient in declining to proceed with an opening statement or ineffective in delivering his closing arguments.  *See Johnson*, 624 S.W.3d at 587.

### 3. *Cross-Examination of Witnesses*

Appellant also contends that her trial counsel's failure to cross-examine either of the State's two witnesses constituted ineffective assistance of counsel.

"[C]ross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Cantu v. State*, 678 S.W.3d 331, 353 (Tex. App.—San Antonio 2023, no pet.) (quoting *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005)); *see also Lara v. State*, No. 11-22-00311-CR, 2024 WL 2751289, at *4 (Tex. App.—Eastland May 30, 2024, pet. ref'd) (mem. op., not designated for publication) (observing the same).  We cannot say that with the overwhelming evidence of Appellant's guilt, Appellant's trial counsel acted without a legitimate trial strategy or that it fell below an objective standard of reasonableness.  Whether to cross-

examine and how to cross-examine witnesses are matters of defensive trial strategy that courts are reluctant to second-guess, particularly in the face of a silent record. *See Collier v. State*, 528 S.W.3d 544, 547 (Tex. App.—Eastland 2016, pet. ref'd); *see also Sanchez v. State*, No. 04-23-00384-CR, 2024 WL 3588596, at *3 (Tex. App.—San Antonio July 31, 2024, pet. ref'd) (mem. op., not designated for publication).

Appellant does not explain on appeal what she would have gained by cross-examining either witness, and it is unclear what purpose would have been served when the security recording and receipt admitted at trial corroborated the testimony of both witnesses. *See Sanchez*, 2024 WL 3588596, at *3. Appellant has not identified what line of cross-examination, if answered truthfully, would have made a difference in the outcome of her trial. It is possible that trial counsel did not want to overemphasize the substantial evidence against Appellant by pursuing questioning that risked being more harmful than helpful. *See also Lara*, 2024 WL 2751289, at *4 ("If ineffective, cross-examination can serve to bolster the credibility of the [adverse] witness and underscore the very points that are sought to be impeached." (quoting *Dannhaus v. State*, 928 S.W.2d 81, 88 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd)). As in this case, when counsel "has had no opportunity to explain his actions, we will assume a strategic motive . . . and find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or, stated differently, if no reasonable trial strategy could justify counsel's actions." *Hart*, 667 S.W.3d at 783. Because a reasonable trial strategy could conceivably justify counsel's actions, Appellant has not shown that trial counsel was deficient or ineffective in declining to cross-examine the State's witnesses. *See id.*; *see also Bell v. State*, No. 11-15-00271-CR, 2017 WL 5013380, at *3 (Tex. App.—Eastland Oct. 31, 2017, no pet.) (mem. op., not designated for

publication) ("The absence of trial counsel's reasoning in conducting cross-examination precludes a finding that counsel was 'objectively deficient.'") (quoting *McFarland*, 163 S.W.3d at 754).

### 4. *Objection to Andrea Idith Carr*

Appellant next broadly argues that trial counsel should have made an objection or inquired further into the relationship between the trial court and Carr.

The trial court disclosed the relationship as soon as Carr took the stand and assured the parties it would not affect his "opinion on the case." Appellant does not state what particular objection or line of inquiry would have been appropriate. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) ("To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the applicant must show that the trial judge would have committed error in overruling such an objection."); *Munoz v. State*, No. 11-13-00139-CR, 2015 WL 4053483, at *5 (Tex. App.—Eastland June 30, 2015, pet. ref'd) (mem. op., not designated for publication). Moreover, Appellant's trial counsel could have reasonably relied on the trial court's representations that his opinion would not be impacted by his relationship with the witness's husband. *See Hart*, 667 S.W.3d 783; *see also White v. State*, No. 02-14-00320-CR, 2015 WL 4599264, at *4 (Tex. App.—Fort Worth July 30, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that the appellant cannot meet his burden to establish ineffective assistance where trial counsel could "have reasonably credited and relied on the trial judge's representations that her association with the complaining witness was limited and that her sentencing decision would not be impacted by the association"). Further, if trial counsel's strategy had been to persuade the trial court to extend mercy in the punishment phase, then impliedly questioning the trial court's integrity and stated neutrality might undermine that strategy. Appellant has not shown that

trial counsel was deficient or his representation ineffective in this instance. *See Johnson*, 624 S.W.3d at 587.

### 5. *Calling Medical Expert Witnesses*

Appellant also complains that trial counsel should have presented a medical professional such as a doctor or nurse, "or even [her] personal injury counsel to testify about the nature and extent of her injuries, how they would be exacerbated by a period of incarceration, or what prolonging the surgery or physical therapy she would not receive while in prison would do for her long-term healing prospects."

To obtain relief based on an uncalled witness, Appellant must show that the witness was available to testify, and that the testimony sought would have benefited her defense. *Renfroe*, 529 S.W.3d at 235 (citing *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007)); *Dobbins v. State*, No. 11-18-00230-CR, 2020 WL 5085020, at *3 (Tex. App.—Eastland Aug. 27, 2020, pet. ref'd) (mem. op., not designated for publication).

While trial counsel's decision not to call a witness is not insulated from appellate review, there is no evidence in the record that any of the witnesses Appellant proposes were available to testify. *See Renfroe*, 529 S.W.3d at 235; *see also Zarate v. State*, No. 11-17-00260-CR, 2019 WL 4786035, at *3 (Tex. App.—Eastland Sept. 30, 2019, pet. ref'd) (mem. op., not designated for publication) ("The failure to call witnesses does not constitute ineffective assistance without a showing that the witnesses were available to testify and that their testimony would have benefited [a]ppellant."). Moreover, we cannot speculate on what her personal injury attorney could have testified to that would not be hearsay or what a medical witness would have said about Appellant's medical state or its effect, if any, on punishment. *See Renfroe*, 529 S.W.3d at 235; *see also Ramirez*, 280 S.W.3d at 853. Appellant has not shown that trial counsel was deficient or his representation ineffective

because some unspecified medical expert witness or Appellant's personal injury counsel was not called to testify. *See Johnson*, 624 S.W.3d at 587.

### 6. *Sufficiency of Prior Judgments*

Appellant lastly argues that "[e]ven assuming that, given the nature of the evidence against her, any reasonable jury would have found [her] guilty of the offense, any competent attorney would have at least tested the sufficiency of the prior judgments against [her]." But on what basis?

Appellant's trial counsel stipulated to the veracity of the two prior judgments of conviction, and authenticated copies of the judgments were admitted into evidence. Each judgment of conviction included Appellant's full name, date of birth, social security number, height and weight, and fingerprints—which is sufficient to connect Appellant to the prior offenses. *See Flowers v. State*, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007) (Johnson, J., concurring) (noting that there exists an "inexhaustive list of factors that might be considered" to sufficiently connect a defendant to a prior offense, including: "full name , date of birth, Social Security number, what the prior offense was, the place and date of the prior offense, the date of conviction"); *cf. Mendoza v. State*, No. 11-23-00123-CR, 2024 WL 3528561, at *6 (Tex. App.—Eastland July 25, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding that the State failed to link appellant to the judgment of conviction where the judgment contained "minimal descriptive information" and "none of the 'other' documents that the State offered to support the enhancement allegation include any personal descriptors or other information that identify [a]ppellant—such as his date of birth, social security number, fingerprints, photographs, signatures, or other identifying information"). In light of the supporting evidence of the prior judgments found in the record and, in the

absence of an explanation from trial counsel regarding his trial strategy, we cannot conclude that his performance was deficient.  *See Johnson*, 624 S.W.3d at 587.

C.  *Conclusion*

Having reviewed the record and Appellant's individual complaints and applying the legal presumption that Appellant's trial counsel's conduct fell within the wide range of reasonable representation, we conclude trial counsel's assistance was not "so outrageous that no competent attorney would have engaged in it."  *See Sandoval*, 665 S.W.3d at 545 (quoting *Goodspeed*, 187 S.W.3d at 392).  We overrule Appellant's sole issue.  *Renfroe*, 529 S.W.3d at 235 (failure to make a showing under either prong of *Strickland* defeats an ineffective-assistance-of-counsel claim).

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


January 24, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.